UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MOHSEN HAGHIGHATPOUR, <br><br> Petitioner, <br><br> v. <br><br> ERIC H. HOLDER, Jr., Attorney General, <br><br> Respondent. | No. 07-70872 <br><br> Agency No. A023-387-462 <br><br> ORDER |

| | |
|---|---|
| MOHSEN HAGHIGHATPOUR, <br><br> Petitioner, <br><br> v. <br><br> ERIC H. HOLDER, Jr., Attorney General, <br><br> Respondent. | No. 07-73100 <br><br> Agency No. A023-387-462 <br><br> ORDER |

Before: PREGERSON, FISHER, and BERZON, Circuit Judges.

The Memorandum Disposition filed on July 27, 2011 is amended as follows:

Replace the paragraph on pages 8-9 that states <**5.** Substantial evidence supports the BIA's rejection of Haghighatpour's Convention Against Torture (CAT) claim, which was premised on the possibility that Germany would deport

him to Iran and on his inability to work in his chosen field in Germany.  Nothing in the record beyond Haghighatpour's assertions indicates that Germany is likely to deport him to Iran.  And the inability to find employment in one's chosen field does not amount to torture.> with **<5.**  Haghighatpour's Convention Against Torture (CAT) claim was premised on the possibility that Germany would deport him to Iran and on his inability to work in his chosen field in Germany.  The inability to find employment in one's chosen field does not amount to torture.  If, however, on remand, the BIA finds that once removed to Germany, Haghighatpour is more likely than not to be further removed to Iran, it should assess whether he is therefore entitled to CAT relief.>.

With this amendment, the petition for panel rehearing is DENIED.

No further petitions will be entertained.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MOHSEN HAGHIGHATPOUR, Petitioner, v. ERIC H. HOLDER, Jr., Attorney General, Respondent. | No. 07-70872 Agency No. A023-387-462 AMENDED MEMORANDUM[*] |
| MOHSEN HAGHIGHATPOUR, Petitioner, v. ERIC H. HOLDER, Jr., Attorney General, Respondent. | No. 07-73100 Agency No. A023-387-462 |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 5, 2011
Pasadena, California

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: PREGERSON, FISHER, and BERZON, Circuit Judges.

Mohsen Haghighatpour petitions for review of decisions by the Board of Immigration Appeals (BIA) dismissing his appeal and denying his motion to reopen. We grant Haghighatpour's petition in part and remand to the BIA.

1.      Substantial evidence supports the BIA's determination that Haghighatpour failed to establish that he was a victim of spousal abuse for the purposes of cancellation of removal. *See* 8 U.S.C. § 1229b(b)(2); *see also Hernandez v. Ashcroft*, 345 F.3d 824, 834-35 (9th Cir. 2003). The evidence includes Haghighatpour's quite detailed arrest report; the 3-year restraining order his wife obtained against him after a hearing at which Haghighatpour was present; neighbors' failure to corroborate Haghighatpour's story; and medical records in which Haghighatpour's wife reported that her husband was abusing her. Although there is some contrary evidence, the record does not compel a finding that Haghighatpour was battered or subjected to extreme cruelty by his wife.

2.      The BIA determined Haghighatpour's asylum application untimely because he had failed to establish that he either filed it within one year of his arrival in the United States or qualified for an exception to the deadline. *See* 8 U.S.C. § 1158(a)(2)(B) and (D); 8 C.F.R. § 208.4(a)(2)(i)(A) and (B). We may

review the application of § 1158's one-year bar "to undisputed historical facts." *Ramadan v. Gonzales*, 479 F.3d 646, 654 (9th Cir. 2007) (per curiam).

Assuming that the BIA and IJ were correct that Haghighatpour filed his application five days after the one-year deadline, the record compels a finding that Haghighatpour filed within a reasonable period after extraordinary circumstances ended. The BIA erred in determining otherwise.

First, the BIA should have analyzed Haghighatpour's claim that there was an applicable exception under the "extraordinary circumstances," not the "changed circumstances" rubric. Changed circumstances must "materially affect the applicant's eligibility for asylum," while extraordinary circumstances are those that "relat[e] to the delay in filing." 8 U.S.C. § 1158(a)(2)(D). That Haghighatpour had an adjustment application pending until February 24, 2000, shortly before he filed his asylum application, "relat[es] to [his] delay in filing," not to his eligibility for asylum. *Id.* For example, a situation in which an applicant maintained one of various types of legal status in the United States until a reasonable period before filing is a recognized extraordinary circumstance. *See* 8 C.F.R. § 208.4(a)(5)(iv).

Second, the BIA erred in concluding that because his marriage had failed well before his adjustment application was denied, Haghighatpour had not filed within a reasonable period. "[T]he nonviability of a marriage at the time of

3

adjustment is not a permissible basis for denying a petition." *Hernandez*, 345 F.3d at 846. Denial of adjustment of status was therefore not inevitable at the time the marriage failed.

Once adjustment was denied, Haghighatpour filed his asylum application within a month, a reasonable period in which to do so. *See Husyev v. Mukasey*, 528 F.3d 1172, 1182 (9th Cir. 2008); 65 Fed. Reg. 76,121-01, 76,123-24. The record therefore compels a finding that Haghighatpour filed within a reasonable period after the "extraordinary circumstances relating to the delay in filing an application" ended. 8 U.S.C. 1158(a)(2)(D). We therefore remand to the BIA to consider Haghighatpour's claim for asylum from Germany on the merits.[1]

**3.** In concluding that Haghighatpour was firmly resettled in Germany, *see* 8 U.S.C. § 1158(b)(2)(A)(vi), the BIA failed to apply the offer-based firm resettlement standard articulated in *Maharaj v. Gonzales*, 450 F.3d 961 (9th Cir. 2006) (en banc). Instead, the BIA took a totality of the circumstances approach,

---

[1] Haghighatpour seeks asylum from both Iran and Germany, but the question of whether he was firmly resettled in Germany must be resolved before his claim for asylum from Iran can be considered on the merits. The government appears to argue that firm resettlement in Germany would bar Haghighatpour's application for asylum not only from Iran, but also from Germany. Because neither the BIA nor IJ addressed whether a petitioner can seek asylum from his country of resettlement, we do not resolve the issue. *See Nahrvani v. Gonzales*, 399 F.3d 1148, 1152 & n.1 (9th Cir. 2005).

4

expressly giving weight to the number of years Haghighatpour had lived in Germany, as well as his schooling and work in Germany, his marriage to a German citizen, and his travel using German-issued documents. Under *Maharaj* and *Matter of A-G-G-*, 25 I. & N. Dec. 486 (B.I.A. 2011), the BIA should have focused directly on whether the government had met its burden of "showing that [Haghighatpour] had an offer of some type of official status permitting him to reside in [Germany] *indefinitely*." *Maharaj*, 450 F.3d at 964 (emphasis added).

The record in this case is unclear as to whether Haghighatpour received an offer of permanent residency in Germany. Haghighatpour testified that he had "permanent residency," and so acknowledged on several forms. But he also stated unequivocally that his residency permit did not allow him to remain in Germany permanently, testified that he was on a student visa for his entire time in Germany, and explained that the type of residency he had in Germany required him to remain a student or be employed. The government did not identify what type of residency permit Haghighatpour had, or how the German residency laws operate. *See Maharaj*, 450 F.3d at 977; *Matter of A-G-G-*, 25 I. & N. Dec. at 502, 504-05.

Because the BIA applied the wrong legal framework in making its firm resettlement determination, it never determined the terms of Haghighatpour's residency in Germany. We remand for the agency to apply the offer-based

5

framework articulated in *Maharaj* and *Matter of A-G-G-*. Given the state of the record, a remand back to the IJ "to conduct further fact-finding consistent with the [firm resettlement] framework" may be necessary before the BIA can apply that framework. *Matter of A-G-G-*, 25 I. & N. Dec. at 505; *see also Maharaj*, 450 F.3d at 977.

4.     The BIA determined that Haghighatpour failed to establish a clear probability of persecution on any protected ground if removed to Germany. *See* 8 U.S.C. § 1231(b)(3)(A). We address each protected ground asserted in turn.

a.     **Nationality or Race.** The only nationality or race-based persecution properly exhausted before the BIA was Haghighatpour's claim that he was persecuted in Germany by private German citizens because he was a foreigner. The BIA's rejection of that claim is supported by substantial evidence.

Haghighatpour's evidence concerning a nexus to a protected ground consists of vague and general accusations of widespread racism, neo-Nazism, and anti-foreigner sentiment. This indistinct evidence does not compel the conclusion that the attacks Haghighatpour suffered were because of his race or nationality. *Cf. Mashiri v. Ashcroft*, 383 F.3d 1112, 1121 (9th Cir. 2004) (noting that the petitioner "testified specifically about anti-foreigner slogans or symbols that accompanied nearly every violent incident"); *Baballah v. Ashcroft*, 367 F.3d 1067, 1077 (9th

6

Cir. 2004) (relying on petitioner's own belief and persecutors' use of the derogatory slur "goy" as satisfying the "on account of" prong).

We therefore deny the petition with regard to persecution in Germany on account of his race or nationality.

**b.    Religion.** Substantial evidence also supports the BIA's rejection of Haghighatpour's religion-based claim for withholding. The record reveals only that Haghighatpour is a Scientologist, that Scientologists in Germany face discrimination and harassment, and that Haghighatpour lost a job offer at a public university because he was a Scientologist. Haghighatpour, however, was able to find some work and continue to practice his religion. *See Nagoulko v. INS*, 333 F.3d 1012, 1016 (9th Cir. 2003); *Gormley v. Ashcroft*, 364 F.3d 1172, 1177-78 (9th Cir. 2004). Substantial evidence supports the BIA's finding that Haghighatpour's religion-based claim for withholding of removal fails to find support in the record. We therefore deny the petition with regard to the religious persecution.

**c.    Political Opinion or Membership in a Particular Social Group.** Haghighatpour's final basis for seeking withholding of removal from Germany is his contention that, if returned, he will more likely than not be persecuted by Iranian agents because of his former membership in SAVAK. The

BIA never addressed whether these facts established the requisite probability of persecution. Instead, the BIA asserted only that Haghighatpour "traveled outside Germany many times, yet did not seek asylum elsewhere, undermin[ing] his claim that he is fearful of returning."

We cannot uphold this ruling. There is "no subjective component" to a withholding claim, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987), so any inference about Haghighatpour's subjective fear does not matter. Moreover, the record provides no support for the BIA's assertion that Haghighatpour had "traveled outside of Germany *many times*." (Emphasis added). The record contains a reference to only one time that Haghighatpour left and returned to Germany in the 19 years he lived there: his trip to London to meet his future wife.

Because the BIA applied an incorrect standard and misstated the record in doing so, we grant the petition with regard to the withholding of removal claim as it relates to persecution by Iranian agents. On remand, the BIA must address whether Haghighatpour would more likely than not be persecuted by Iranian agents if returned to Germany.

**5.** Haghighatpour's Convention Against Torture (CAT) claim was premised on the possibility that Germany would deport him to Iran and on his inability to work in his chosen field in Germany. The inability to find employment

8

in one's chosen field does not amount to torture. If, however, on remand, the BIA finds that once removed to Germany, Haghighatpour is more likely than not to be further removed to Iran, it should determine whether he is therefore entitled to CAT relief.

6.    As to his due process claim, Haghighatpour fails to establish any prejudice from any error that may have occurred with regard to transcription or failure to testify to the full extent of abuse by his wife. *See Larita-Martinez v. INS*, 220 F.3d 1092, 1095 (9th Cir. 2000). Nor does the record reveal bias by the IJ constituting a violation of due process.

7.    Finally, the BIA did not abuse its discretion in denying Haghighatpour's motion to reopen. Haghighatpour has not demonstrated that his affidavit and the letters from his friends could not have been submitted earlier. *See* 8 C.F.R. § 1003.2(c)(1). Moreover, nothing in the State Department Report or the Amnesty International article suggest that the information contained therein was new or represented changed conditions in Germany. *See id.*

**Conclusion**

In sum: We grant Haghighatpour's petition in part and remand to the BIA to (1) address Haghighatpour's claim for asylum from Germany on the merits; (2) develop the record with respect to whether Haghighatpour received an offer of

indefinite residency in Germany and reconsider the question of firm resettlement in light of the standards set forth in *Maharaj* and *Matter of A-G-G-*; and (3) determine whether Haghighatpour will more likely than not be persecuted in Germany by Iranian agents whom the German police are unable or unwilling to control.

We deny Haghighatpour's petitions as to his claims regarding (1) cancellation of removal; (2) withholding from Germany on the basis of anti-foreigner violence and religion; (3) CAT; (4) due process; and (5) the motion to reopen.

This panel retains jurisdiction over all further appeals in this matter. Each party to bear its own costs on appeal.

**Petitions GRANTED in part, DENIED in part and REMANDED.**