*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0111p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

FATOU THIAM,

*Petitioner,*

*v.*

No. 10-3371

ERIC H. HOLDER, JR.,

*Respondent.*

On Petition for Review of an Order of the Board of Immigration Appeals.
No. A098 157 467 - Arlington.

Argued: January 27, 2012

Decided and Filed: April 30, 2012

Before: BOGGS, ROGERS, and SUTTON, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Philip A. Eichorn, Cleveland, Ohio, for Petitioner. Christina Bechak Parascandola, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Philip A. Eichorn, Cleveland, Ohio, Jennifer I. Peyton, Cleveland, Ohio, for Petitioner. Christina Bechak Parascandola, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────────

**OPINION**

─────────────────

ROGERS, Circuit Judge. Fatou Thiam petitions this court for review of an order of the Board of Immigration Appeals denying her application for asylum and withholding of removal. Thiam was born in Mauritania and lived in Senegal for approximately 14 years before coming to the United States. In reviewing the immigration judge's decision, the BIA applied Fourth Circuit law because the final immigration court hearing was physically held in Virginia, and accordingly the BIA did

1

not consider whether Thiam was firmly resettled under this court's case law. Nor did the BIA apply its own four-step framework for such determinations. Further review by the BIA is therefore necessary. We decline to transfer Thiam's case to the Fourth Circuit, because such an action would not be in the interest of justice on the facts of this case.

## I.

Fatou Thiam is a black woman and a member of the Wolof tribe in Mauritania. After allegedly suffering physical and sexual violence at the hands of white Arab members of the Mauritanian military, she was placed in a canoe and sent to neighboring Senegal. She lived in Senegal for about 14 years with her mother and sister, first in a refugee camp and eventually in a rented apartment, and sold fruit in the street. Thiam alleges that she worked that whole time to save money for a ticket to America, and that she accomplished that feat and arrived in the United States on July 20, 2004 with a fake Senegalese passport. She applied for asylum the following month.

Thiam's first removal hearing was conducted on October 10, 2006 at the Cleveland Immigration Court before a Cleveland immigration judge (IJ). Thiam did not appear at the hearing because of a confusion as to the address, and the IJ in absentia found her ineligible for asylum. However, after hearing her explanation for missing the hearing, the IJ reopened her case and placed it on the Cleveland docket. Thiam attended three hearings in Cleveland in 2007, but the presiding IJ was in Arlington, Virginia and conducted the hearings via videoconference. At this point the Cleveland court had recently been established as an independent immigration court by the Executive Office of Immigration Review (EOIR), but it did not have enough of its own immigration judges to conduct all the proceedings that its docket demanded. For her fourth and final hearing, on July 14, 2008, Thiam and her counsel traveled to Arlington to testify before the judge there, because she and her lawyer believed that her credibility would be more apparent in a personal appearance.

In an oral opinion, the IJ found Thiam credible, but concluded that she was barred from seeking asylum because she had firmly resettled in Senegal. Firm

resettlement is a bar to asylum under the Illegal Immigration Reform and Immigrant Responsibility Act. 8 U.S.C. § 1158(b)(2)(A)(vi). Although the IJ found credible Thiam's testimony that she never received an official offer to remain in Senegal, the IJ noted that Thiam admitted that she made no effort to obtain identification papers of any kind, because they were not necessary for her to live there and sell fruit. The IJ also found, that though Thiam did suffer past persecution in Mauritania, improvements in the human rights record of the country "would indicate that the respondent could return to Mauritania, should she so choose." The IJ said that Thiam might have obvious concerns about doing so, but "certainly can return to Senegal," since Mauritanian refugees can obtain status there. The IJ concluded that Thiam's application for asylum "would fail" because the change in country conditions meant "that the respondent would no longer have a fear of future persecution in Mauritania."

Thiam appealed to the Board of Immigration Appeals (BIA) and, in addition to appealing the claims that had been before the IJ, moved in the alternative for a remand of the case for consideration of new evidence regarding a recent military coup in Mauritania that would make it unsafe for her to return. The BIA affirmed the IJ's decision, and spent the majority of its opinion discussing the firm-resettlement finding as correct under Fourth Circuit case law. The BIA stated briefly that the Fourth Circuit is "where this case arises"; venue was not raised in either side's briefs. The BIA noted that the evidence on the record supported the IJ's changed-conditions finding "such that [Thiam] is not eligible for withholding of removal under the Act." The BIA denied Thiam's motion for a remand because the evidence she offered in support, an affidavit from a professor acknowledging the change in government, "does not establish how the change in government affects the respondent's claim for relief," and so she had not satisfied her burden of showing that changed country conditions would likely change the outcome of her case. The BIA invited Thiam to file a motion to reopen the case with additional evidence on this point under 8 C.F.R. § 1003.2; Thiam elected instead to file this timely petition for review.

II.

A. Venue

Before us is also the Government's motion to transfer the case to the Fourth Circuit. This circuit however retains jurisdiction and a transfer is not required in the interest of justice. The Government's argument in favor of a transfer is predicated on 8 U.S.C. § 1252(b)(2), which states in relevant part: "The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." This provision is not jurisdictional, as the Government has conceded. It is entitled "[v]enue and forms" and contains no language that would indicate a congressional intent to limit jurisdiction to a single court of appeals. We therefore join our sister circuits who have widely concluded that § 1252(b)(2) is a nonjurisdictional provision. *See Sorcia v. Holder,* 643 F.3d 117, 121 (4th Cir. 2011); *Avila v. U.S. Att'y Gen.*, 560 F.3d 1281, 1284 (11th Cir. 2009); *Moreno–Bravo v. Gonzales*, 463 F.3d 253, 262 (2d Cir. 2006); *Georcely v. Ashcroft*, 375 F.3d 45, 49 (1st Cir. 2004); *Nwaokolo v. I.N.S.*, 314 F.3d 303, 306 n. 2 (7th Cir. 2002) (per curiam); *cf. Bonhometre v. Gonzales*, 414 F.3d 442, 446 n. 5 (3d Cir. 2005). Therefore, it is not jurisdictionally mandated that we transfer the case.

Under such circumstances, it is still our option to transfer a petition to another circuit with jurisdiction, but we decline to do so here. We take guidance from 28 U.S.C. § 1631, which mandates that a circuit court lacking jurisdiction must transfer a case to an appropriate circuit "if it is in the interest of justice." Other courts have interpreted the provision to counsel in favor of weighing the interest of justice before granting a motion to transfer, even where jurisdiction is not lacking. *See Sorcia*, 643 F.3d at 122; *Moreno–Bravo*, 463 F.3d at 263.

Even if the Sixth Circuit is not the proper venue under § 1252(b)(2)—a determination that is uncertain and that is not required in this case—the interest of justice does not warrant a transfer. Both sides offer convincing arguments as to why the venue provision of the INA dictates their circuit of choice as the proper venue. The Government argues that the literal meaning of 8 U.S.C. § 1252(b)(2) demonstrates that

the Fourth Circuit is the proper venue because the last proceeding occurred there with all parties present.  Thiam argues that the Sixth Circuit is the proper venue because it is the original venue of the proceedings and no motion to transfer venue was ever filed before the immigration judge.  Thiam also makes a strong policy argument that an applicant should be able to avail herself of all of her due process rights, including appearing in person before an IJ, without fear of deleterious side effects like a change in the circuit law applied.  Given these persuasive arguments and the confusing history of this case, we find it entirely understandable that Thiam brought her appeal to this circuit.  There is no reason why transferring this case would be more convenient, nor would justice be served by having the parties brief their arguments afresh using a different circuit's precedent.

In 2007, the EOIR offered some proposed rules to amend Department of Justice regulations regarding jurisdiction and venue in removal proceedings.  *See* 72 Fed. Reg. 14494-97.  These rules, never finally promulgated, were in large part designed to address the mounting confusion resulting from telephonic and video proceedings.  We encourage the EOIR to take up this project once more and provide much needed guidance as to the meaning of § 1252(b)(2) in the new age where parties, counsel, and judge may only be virtually co-located.

In the meantime, we decline to transfer the case.  Our approach accords with that of the Fourth Circuit in *Sorcia*, 643 F.3d 117.  As in our case, Sorcia's immigration proceedings involved a confusing flurry of live and televideo hearings across two circuits, the Fourth and the Eleventh.  Sorcia sought review from the Fourth Circuit, which concluded "[a]fter viewing these facts as a composite . . . that Atlanta is the location where the proceedings were completed" for the purposes of the venue provision. *Id*. at 123.  However, the court still denied the Government's motion for change of venue to the Eleventh Circuit.  The court pointed out that the Fourth Circuit retained jurisdiction because § 1252(b)(2) is not a jurisdictional provision, and relied on 28 U.S.C. § 1631 to conclude that a transfer would not be in the interest of justice. *Id*. at 122.  The court reasoned that Sorcia's mistaken belief that venue was in the Fourth Circuit was

entirely understandable given the confusing facts. Since the matter had already been thoroughly briefed and argued in the Fourth Circuit, the court was reluctant to order proceedings to begin again in the Eleventh. The court found no reason why litigation in the Eleventh Circuit would be more convenient. *Id*. at 123-24.

## B. Thiam's Petition

The BIA used Fourth Circuit case law to evaluate the IJ's firm-resettlement finding, but our circuit's case law is less clear than the Fourth Circuit's as to whether an official offer of settlement is required for an asylum seeker to be deemed firmly resettled as opposed to indirect evidence affirming that such an offer was obtainable. Since the IJ found Thiam to be credible regarding her claim that no such official offer was ever made, our circuit's position on such a question would be crucial in ruling on Thiam's petition. We need not conclusively answer that question, however, because in this case the BIA did not follow its own framework for firm-resettlement determinations, as laid out in *Matter of A-G-G-*, 25 I & N. Dec. 486 (BIA 2011). *A-G-G-* arose out of the Sixth Circuit, and thus reflects what the BIA deems to be applicable in our circuit. The BIA's framework involves four steps, with the preliminary burden of proof on the Government to offer evidence of firm resettlement. Although *A-G-G-* was decided after the IJ's decision in this case, the BIA has used its framework to analyze other IJ decisions decided before the ruling. *See Matter of D-X- & Y-Z-*, 25 I. & N. Dec. 664 (BIA 2012). At least one other circuit court has remanded a case so that the BIA could apply the *A-G-G-* framework. *See Haghighatpour v. Holder*, 446 F. App'x 27, 30-31 (9th Cir. 2011). We do the same, and remand the case to the BIA to let it determine how to consider the record in light of its framework. (In giving the BIA the first crack, of course, we are not taking a position on the extent to which the *A-G-G-* framework is consistent with the law.) The BIA on remand may, if appropriate, revisit other arguments, such as credibility and changed conditions in Mauritania.

III.

We deny the Government's motion to transfer and remand Thiam's case to the BIA for further proceedings.