In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2246

HILARIO RIVAS-MELENDREZ,

*Petitioner-Appellant,*

*v.*

JANET A. NAPOLITANO, et al.,

*Respondents-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 6583—**James F. Holderman**, *Chief Judge.*

ARGUED OCTOBER 24, 2011—DECIDED AUGUST 1, 2012

Before SYKES and TINDER, *Circuit Judges*, and DEGUILIO, *District Judge.*[*]

SYKES, *Circuit Judge.* Hilario Rivas-Melendrez ("Rivas") is a native and citizen of Mexico who entered the United States in 1970 as a lawful permanent resident. On November 9, 2009, the Department of Homeland Security

[*] The Honorable Jon E. DeGuilio, United States District Court for the Northern District of Indiana, sitting by designation.

("DHS") charged Rivas with removability because of a 1980 conviction for statutory rape. At his hearing before an immigration judge ("IJ"), Rivas acknowledged the conviction but argued that it did not constitute an aggravated felony and that he was therefore not removable. The IJ rejected this argument and, after finding that Rivas had failed to timely file for a discretionary waiver of inadmissibility, ordered Rivas removed to Mexico. The IJ rejected Rivas's subsequent motion to reopen and found that Rivas was not eligible for a waiver of inadmissibility. On August 17, 2010, Rivas was removed to Mexico.

Two months later Rivas filed a petition for a writ of habeas corpus in the Northern District of Illinois pursuant to 28 U.S.C. § 2241. Rivas argued that he was wrongfully removed because the removal order was invalid. The district court dismissed the petition for lack of subject-matter jurisdiction. The court held that Rivas's claim was barred by 8 U.S.C. § 1252(g), which prevents courts from hearing challenges to the execution of removal orders, and also that Rivas was not "in custody" as required under 28 U.S.C. § 2241(c).

We affirm. While Rivas's situation is sympathetic, multiple jurisdictional bars preclude our consideration of his case. The statutory scheme in 8 U.S.C. § 1252(a) makes clear that challenges to removal orders may be heard only by a petition for review in the appropriate court of appeals (here, the Eleventh Circuit) and that no other courts have jurisdiction to review removal orders. Section 1252(g) further provides that "no court

shall have jurisdiction to hear" any challenge to the execution of a removal order. Rivas's reliance on § 1252(f)(2) is misplaced because that provision is not an independent grant of jurisdiction. Nor was Rivas "in custody" as is required for jurisdiction under the general habeas statute. We have no doubt that Rivas's separation from his life and family in the United States constitutes a unique hardship, but it does not amount to the sort of unique restraint needed to sustain a habeas petition.

## I. Background

Rivas is a native and citizen of Mexico. In 1970 he was admitted into the United States as a lawful permanent resident. In 1980 a California state court convicted him of unlawful sexual intercourse with a female under the age of 18 in violation of section 261.5 of the California Penal Code—that state's "statutory rape" offense. But it was not until 30 years later that federal immigration authorities sought to remove him based on the conviction. In the meantime, Rivas served in the United States Navy; married his wife, who is now a lawful permanent resident as well; fathered four children, all of whom are United States citizens; and established stable residency and steady employment in Chicago.

On November 9, 2009, the DHS issued Rivas a notice to appear, charging him with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) on the ground that his 1980 conviction constituted an aggravated felony. Immigration and Customs Enforcement ("ICE") agents took Rivas into

custody in Chicago and transferred him to an ICE facility in Lumpkin, Georgia, for detention and removal proceedings. Rivas's initial hearing took place before an IJ on January 12, 2010, during which Rivas acknowledged the 1980 conviction but denied that it constituted an aggravated felony rendering him removable. The IJ rejected this argument and sustained the charge of removability.[1]

Rivas subsequently sought relief from removal in the form of a discretionary waiver of inadmissibility under former 8 U.S.C. § 1182(c). The IJ gave Rivas 30 days to apply for this waiver (until February 11, 2010) and scheduled a second hearing for February 23, 2010. Rivas failed to submit an application by the February 11, 2010 deadline, but he did on that day move to continue the February 23, 2010 hearing, and on February 16, 2010, he filed a late application for relief. For reasons unknown, the IJ did not see this untimely application, and on February 17, 2010—six days before the scheduled hearing—he issued a written decision memorializing his January 12, 2010 finding that Rivas had committed an aggravated felony and ordering Rivas removed to Mexico.

---

[1] The Ninth Circuit has held that California's statutory-rape offense is not an aggravated felony. *See Pelayo-Garcia v. Holder*, 589 F.3d 1010, 1011 (9th Cir. 2009) (holding that unlawful sexual abuse of a minor under section 261.5(d) of the California Penal Code is not categorically an aggravated felony under 8 U.S.C. § 1101(a)(43)(A)).

On March 12, 2010, Rivas filed a motion to reopen his case, and on March 17, 2010, he moved to stay his removal. The IJ denied the motion to stay on March 24, 2010, and mistakenly stated that he had already denied the motion to reopen. Rivas then appealed to the Board of Immigration Appeals ("BIA"), and the BIA, noting that the IJ failed to properly consider Rivas's motion to reopen, remanded the case to the IJ for a new decision. On July 28, 2010, the IJ denied Rivas's motion to reopen, finding that his application for relief was untimely and therefore deeming his application waived. The IJ further noted that Rivas was ineligible for a discretionary waiver of inadmissibility because of his 1980 conviction. About three weeks later, on August 17, 2010, ICE officials removed Rivas to Mexico. In that three-week period, Rivas neither moved to stay his removal nor appealed the removal order itself to the BIA.

On October 14, 2010, Rivas filed this habeas action under 28 U.S.C. § 2241 in the Northern District of Illinois, arguing that he was wrongfully removed by ICE officials because the removal order was invalid. The district court dismissed this petition for lack of subject-matter jurisdiction based on 8 U.S.C. § 1252(a)(5), which makes review by the appropriate court of appeals the exclusive form of judicial review of a removal order. On November 5, 2010, Rivas moved the district court to reconsider its dismissal under Rule 59(e) of the Federal Rules of Civil Procedure and asked for leave to file an amended petition under Rule 15(a). In this motion he clarified that he was not challenging the removal order itself, but rather the ICE agents' execution of this or-

der. In particular, Rivas argued that he had a 30-day period following the IJ's July 28, 2010 decision to appeal to the BIA and during that time his removal should have been automatically stayed. Therefore, he argued, his removal on August 17, 2010—only three weeks after July 28, 2010, while the appeal clock was still running—was unlawful. Rivas maintained that the court had jurisdiction under 8 U.S.C. § 1252(f)(2) because he could "show[] by clear and convincing evidence that the entry or execution of [his removal] order [was] prohibited as a matter of law."

The district court denied Rivas's motion to reconsider and for leave to amend, once again concluding that multiple jurisdictional bars precluded the court's consideration of the case. First, the court explained that 8 U.S.C. § 1252(g) generally bars all courts from hearing challenges to the execution of removal orders and that § 1252(f)(2) functions only as a limitation on the conditions for granting injunctive relief, not as an independent grant of jurisdiction. Second, the court noted that even aside from the jurisdictional bar in § 1252(g), there was no habeas jurisdiction in the first place because Rivas was not "in custody" under the terms of 28 U.S.C. § 2241(c). Rivas timely appealed.

## II. Discussion

We ordinarily review orders denying relief under Rule 59(e) and leave to amend under Rule 15(a) for abuse of discretion. *Foster v. DeLuca*, 545 F.3d 582, 583 (7th Cir. 2008); *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003). But where such motions raise

questions of law, our review is de novo. *Sosebee v. Astrue*, 494 F.3d 583, 589 (7th Cir. 2007).

Rivas argues that both the removal order and the ICE agents' execution of that order are legally invalid, and he seeks to be returned to the United States so that he may appeal the IJ's removal order to the BIA. These arguments turn on the procedural adequacy of his removal proceedings under the relevant immigration regulations. We agree with the district court that the habeas petition faces two separate jurisdictional impediments: First, 8 U.S.C. § 1252(g) prevents district courts from reviewing the execution of removal orders; and second, Rivas is not "in custody" under 28 U.S.C. § 2241(c).

## A.  Judicial Review of Removal Orders, 8 U.S.C. § 1252

The statutory framework established in 8 U.S.C. § 1252 channels and limits the jurisdiction of the federal courts over challenges to an alien's removal order. The general rule is that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be *the sole and exclusive means for judicial review* of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5) (emphasis added). The "appropriate court of appeals" is "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings," *id.* § 1252(b)(2), which in this case would be the Eleventh Circuit

because the IJ's proceedings occurred in Georgia.[2] Neither the Seventh Circuit nor any district court has jurisdiction to hear a challenge to his removal order. These provisions formed the basis for the district court's initial dismissal of Rivas's habeas petition.

Rivas suggests that procedural defects in his removal proceedings rendered his removal order void from its inception. He therefore argues that he is not seeking *review* of the order, but rather is challenging whether any such order existed in the first place.[3] Rivas correctly

---

[2] Rivas would face some steep hurdles on a petition for review in the Eleventh Circuit. First, 8 U.S.C. § 1252(d)(1) provides that review of a final order of removal is only available where the alien has exhausted all administrative remedies, which means the appeal would need to be directly from the BIA itself. But because Rivas never appealed his actual removal order *to* the BIA, he obviously could not have petitioned for review *from* a decision of the BIA. Furthermore, this form of review is circumscribed for aliens removed on the basis of having committed an aggravated felony. *See* 8 U.S.C. § 1252(a)(2)(C). For this class of aliens, the appropriate court of appeals has jurisdiction to review only constitutional claims and questions of law. *See id.* § 1252(a)(2)(D).

[3] The government contends that Rivas waived this argument by failing to raise it before the district court. The usual rule, of course, is that a party may not raise an issue for the first time on appeal. *Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009). But that rule has exceptions, such as where jurisdictional questions are presented. *Int'l Travelers Cheque Co. v. BankAm. Corp.*, 660 F.2d 215, 225 (7th Cir. 1981). Rivas's new argument

(continued...)

argues that other circuits have recognized a distinction between a challenge to a removal order and an argument that no order of removal even existed to be executed. *See Madu v. U.S. Attorney Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006) ("[T]he question presented by Madu's habeas petition is whether there is a removal order at all, which . . . is a different question than whether an extant removal order is lawful."); *Kumarasamy v. Attorney Gen. of U.S.*, 453 F.3d 169, 172 (3d Cir. 2006) ("Kumarasamy is not seeking review of an order of removal. Rather, he claims that his deportation was illegal because there was *no* order of removal.").

But the procedural history of Rivas's case simply cannot be squeezed into the doctrinal framework of *Madu* and *Kumarasamy*. There is no question that the removal order in this case *exists*—indeed, it is an item in the record. Rivas's claim is simply that the order itself was issued without notice to the defendant as required under 8 C.F.R. §§ 1003.23(b), 1003.26(c). *See In re Bulnes-Nolasco*, 25 I & N Dec. 57, 59 (BIA 2009) ("An in absentia deportation order issued in proceedings of which the respondent had no notice is voidable from its inception and becomes a legal nullity upon its rescission . . . ."). Yet this kind of procedural challenge is exactly the sort of claim that would need to be raised

---

[3] (...continued)
is essentially a jurisdictional argument, even if it is bound up with the merits question of whether his removal order was valid, so we will consider it.

before the appropriate court of appeals under § 1252(a). The Northern District of Illinois was not that court, so it lacked jurisdiction to consider Rivas's argument.

Nevertheless, Rivas argues that even if he is unable to challenge the removal order itself, the *execution* of his removal order was invalid because it occurred too soon, while his time to appeal was still running. This particular distinction was the basis of his motion to reconsider and for leave to amend. But here Rivas faces an equally clear jurisdictional bar to the district court's consideration of this question. Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law . . . , no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

We have explained that this provision "names three administrative actions—decisions to 'commence proceedings, adjudicate cases, or execute removal orders'—and interdicts all judicial review 'arising from' those actions, unless some other part of § 1252 allows review." *Sharif ex rel. Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002). The only kind of review available in this context is review by the appropriate court of appeals under § 1252(a). Review by district courts of these three administrative actions is not otherwise provided for in the statute and is therefore blocked. *Id.* So if Rivas now attempts to characterize his habeas suit as

a challenge to the *execution* of his removal order, there can be no doubt that § 1252(g) prevents the district court from considering this claim.

Rivas suggests that § 1252(f)(2) creates an exception to this jurisdictional bar. That provision states that "[n]otwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is prohibited as a matter of law." 8 U.S.C. § 1252(f)(2). Rivas contends that he *can* show by clear and convincing evidence that his removal order was invalid and thus that he falls within this exception. But to the extent Rivas reads this provision as an affirmative grant of jurisdiction, he is misreading the statute. Section 1252(f)(2) puts conditions on the authority of courts to grant injunctive relief, but it presumes that courts have jurisdiction to grant such relief in the first place (as they might, for example, under § 1252(a)). It creates an exception to a limitation on when courts may otherwise grant injunctive relief, not an exception to the jurisdictional bar of § 1252(g). If this interpretation were not clear enough from the text alone, the Supreme Court has specifically held that § 1252(f) is "nothing more or less than a limit on injunctive relief" and that "[t]o find in this an affirmative grant of jurisdiction is to go beyond what the language will bear." *Reno v. Am.-Arab Anti-Discrimination Comm.*,

525 U.S. 471, 481-82 (1999).[4] Sections 1252(a)(5) and 1252(g) together make clear that the district court lacked jurisdiction to hear Rivas's habeas petition, so the exception in § 1252(f) is irrelevant.

## B. "In Custody" Requirement, 28 U.S.C. § 2241(c)(3)

Even aside from the specific jurisdictional limitations embodied in 8 U.S.C. § 1252, Rivas faces a separate jurisdictional obstacle under the general habeas statute itself. A person must be "in custody" of the United States at the time he files his habeas petition for a district court to acquire jurisdiction over the action. *See* 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless . . . (3) [h]e is in custody in violation of the Constitution or laws or treaties of the United States . . . ."); *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). Rivas does not dispute that at present he resides in Mexico free from any form of custody. He argues, however, that his forcible removal from the United States and the permanent bar on his re-entry operate as severe restraints on his liberty not shared by the public at large. These restraints, he argues, are sufficient to meet the "in custody" requirement, particularly because his removal separated him from his life and family in the United States.

---

[4] *Reno* was interpreting an earlier version of § 1252(f), but the general point that this provision is not an affirmative grant of jurisdiction is equally true for the current language.

We do not doubt the severe hardships that Rivas's removal impose upon him and his family. To remove a lawful permanent resident after 40 years of residency for a 30-year-old statutory-rape conviction, and to separate him from his wife and four children in the process, is indeed a unique kind of hardship not shared by the public at large, and perhaps not shared even by most removed aliens. But this unique *hardship* simply does not translate into the kind of unique *restraint* needed to meet the "in custody" requirement as it has been understood in our caselaw. In *Samirah v. O'Connell*, 335 F.3d 545, 551 (7th Cir. 2003) (*"Samirah I"*), we held that an alien living abroad "over whom the United States exercises no control or responsibility" is not in custody merely because he was "denied entry" into the United States. We later reaffirmed this holding, stating that "[h]abeas corpus is a remedy for people in custody; exclusion from the United States is not custody." *Samirah v. Holder*, 627 F.3d 652, 661 (7th Cir. 2010) ("*Samirah II*").

Rivas makes no genuine attempt to wrestle with this adverse authority, relying mostly on the idea that he has a stronger interest in returning to the United States than aliens who have always lived abroad. But while Rivas's family connections and many years of lawful residence make his removal a particularly harsh remedy, they have no bearing on the degree of *control* the United States now exercises over him (none), which is the relevant question for the "in custody" requirement. Rivas provides no plausible basis to distinguish the *Samirah* cases, and we see no principled means of doing so. Because Rivas was not in custody when he

filed his habeas petition, the district court lacked juris-
diction to hear his claim.

### III. Conclusion

We reiterate that Rivas's case is a sympathetic one.
While we do not pass judgment on the merits of his
challenge to his removal, we acknowledge the same
concern articulated by the district court—that in cases
like this one, there is effectively no remedy for what
may have been procedural violations committed by ICE
agents and perhaps other immigration officials in con-
nection with the order of removal. We likewise note
that Rivas has never had a chance to appeal the sub-
stance of his removal order to the BIA and that the IJ
himself was at least partially responsible for creating
confusion in this regard.

What occurred here hardly inspires confidence in
our immigration authorities. This is especially so where
DHS's removal efforts are directed at a long-time perma-
nent resident, husband, and father of four who has
served in the military and remained gainfully em-
ployed—on the basis of a 30-year-old statutory-rape
conviction. Counsel for the government noted at oral
argument that BIA procedures allow for discretionary
reconsideration of Rivas's claims, *see* 8 C.F.R. § 1003.2,[5]

---

[5] Rivas's counsel stated at oral argument that the BIA takes the
position that it lacks jurisdiction to reopen proceedings after an
(continued...)

and that leaves Rivas with at least one potential avenue for relief. But the district court properly dismissed Rivas's habeas petition for lack of jurisdiction.

AFFIRMED.

---

[5] (...continued)
alien has been removed. She was presumably referring to 8 C.F.R. § 1003.2(d), which states that "[a] motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States."

We note that many circuits have held that § 1003.2(d) is inconsistent with 8 U.S.C. § 1229a(c)(7)(A), which permits aliens to file one motion to reopen. *See Lin v. U.S. Attorney Gen.*, 681 F.3d 1236, 1238 (11th Cir. 2012) (holding as such and citing cases). Our circuit has taken a slightly different approach; we have held that § 1003.2(d) itself cannot be read to remove the BIA's jurisdiction to consider a removed alien's motion to reopen. *Marin-Rodriguez v. Holder*, 612 F.3d 591, 593-94 (7th Cir. 2010). On either understanding, however, there would appear to be no categorical bar to the BIA's discretion to reopen Rivas's case, notwithstanding that Rivas has already been removed to Mexico.

8-1-12