FILED: July 21, 2011

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 10-1431

REYNALDO SORCIA,

        Petitioner,

    v.

ERIC H. HOLDER, JR., Attorney General,

        Respondent.

O R D E R

The court amends its opinion filed July 1, 2011, by changing the date on page 6, line 13, to March 18, 2010.

For the Court

/s/ Patricia S. Connor

Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

REYNALDO SORCIA,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 10-1431

On Petition for Review of an
Order of the Board of Immigration Appeals.

Argued: March 23, 2011

Decided: July 1, 2011

Before MOTZ and WYNN, Circuit Judges, and
Ronald Lee GILMAN, Senior Circuit Judge of the
United States Court of Appeals for the Sixth Circuit,
sitting by designation.

Dismissed by published opinion. Judge Wynn wrote the opinion, in which Judge Motz and Senior Judge Gilman joined.

**COUNSEL**

**ARGUED:** H. Glenn Fogle, Jr., THE FOGLE LAW FIRM, LLC, Atlanta, Georgia, for Petitioner. Michael Christopher Heyse, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Tony West, Assistant Attorney General, Civil Division, Mary Jane Candaux, Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

WYNN, Circuit Judge:

It is axiomatic that a court lacking subject matter jurisdiction over an appeal must dismiss the case. Petitioner Reynaldo Sorcia ("Sorcia") asks this Court to review the decision of the Board of Immigration Appeals ("BIA") to deny (1) his petition for cancellation of removal and (2) his motion to reopen removal proceedings so that he could pursue cancellation of removal after an adjustment of status for which he had an application pending. However, because Sorcia raises no constitutional claims or questions of law, we lack jurisdiction to review the discretionary denial of cancellation of removal. 8 U.S.C. § 1252(a)(2)(B). Further, because the BIA based its denial of Sorcia's motion to reopen on a determination that Sorcia did not merit the discretionary relief of cancellation of removal, we also lack jurisdiction to review the denial of the motion. *See Obioha v. Gonzales*, 431 F.3d 400, 406 (4th Cir. 2005). Accordingly, the appeal is dismissed.

I.

Sorcia is a citizen of Mexico. He became a temporary resident of the United States on November 16, 1988 and a lawful

permanent resident on December 1, 1990. On February 5, 2007, he was placed in removal proceedings following the filing of a Notice to Appear with the Immigration Court. [1] He was charged with removability pursuant to 8 U.S.C. 1227(a)(2)(E)(i), which states that "[a]ny alien who at any time after admission is convicted of a crime of domestic violence . . . is deportable."

Sorcia appeared before an Immigration Judge ("IJ") in Atlanta, Georgia, and admitted that he had been convicted of three offenses: (1) misdemeanor domestic violence on February 10, 1997; (2) misdemeanor assault and battery on April 14, 1997; and (3) misdemeanor domestic violence on November 3, 2003. In light of the domestic violence convictions, Sorcia conceded his removability, and the IJ found by clear and convincing evidence that Sorcia was removable.

Thereafter, Sorcia petitioned the IJ for cancellation of removal. Because Sorcia had not been convicted of an aggravated felony and had resided in the United States for more than 16 years after becoming a lawful permanent resident, he was statutorily eligible for cancellation of removal. Under 8 U.S.C. § 1229b(a),

> [t]he Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien-
>
> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
>
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and

---

[1] "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a).

(3) has not been convicted of any aggravated felony.

Nonetheless, even where statutory eligibility is established, an IJ retains discretion to grant or deny an application for cancellation of removal, and the applicant must establish that he warrants the relief sought. *In re C-V-T,* 22 I. & N. Dec. 7 (BIA 1998).

"[T]here is no inflexible standard for determining who should be granted discretionary relief, and each case must be judged on its own merits." *Id.* at 11 (citing *In re L-,* 3 I. & N. Dec. 767, 770 (BIA 1949)). In applying his discretion, the IJ must "balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interest of this country." *In re Marin,* 16 I. & N. Dec. 581, 584 (BIA 1978), *abrogated on other grounds by In re Edwards,* 20 I. & N. Dec. 191 (BIA 1990); *see also In re C-V-T,* 22 I. & N. Dec. at 11 (finding the *Marin* balancing test appropriate when considering requests for cancellation of removal under 8 U.S.C. § 1229b(a)).[2]

The IJ noted that Sorcia's twenty-year residency in the United States constituted a "significant positive equity"

---

[2]"Among the factors deemed adverse to a respondent's application have been . . . the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as a permanent resident of this country." *Marin,* 16 I. & N. Dec. at 584. "Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g., affidavits from family, friends, and responsible community representatives)." *Id.* at 584-85.

weighing in favor of cancellation of removal. The IJ also found that Sorcia's family ties to citizens of the United States and/or lawful permanent residents constituted a "positive factor." Moreover, the IJ found that Sorcia's history of steady employment weighed in his favor.

However, Sorcia's criminal history weighed against him. The court observed that Sorcia's past criminal actions all involved violence and had twice involved the use of firearms. Further, Sorcia had attempted to minimize his responsibility for his offenses. Also, given that Sorcia's convictions occurred over a period of years, the IJ opined that they demonstrated a "propensity to resort to violence." The court additionally noted that Sorcia had failed to pursue treatment for anger management to address this "propensity."

The IJ also considered "collaterally" the fact that Sorcia had been charged with committing a lewd act on a minor, despite the fact that this charge had not been prosecuted. The IJ further considered as "an additional significant negative factor" that Sorcia engaged in tax fraud. The court concluded that:

> [A]n individual who was given the grace of this nation by making him a lawful permanent resident and [has responded] by repeatedly engaging in violent activities that endanger both his family and other individuals in this nation and has filed demonstrably fraudulent tax returns is not deserving of a favorable exercise of the Court's discretion . . . .

The IJ accordingly denied Sorcia's request for cancellation of removal by order of February 4, 2009. Sorcia appealed to the BIA.

The BIA issued a decision dismissing Sorcia's appeal. Like the IJ, the BIA opined that Sorcia's length of residence in the United States, family ties in this country, and steady employ-

ment history all weighed in his favor. After considering the equitable factors weighing in Sorcia's favor, the BIA opined that Sorcia's "criminal history and lack of rehabilitation outweigh the favorable factors in this case." The BIA concluded that Sorcia's criminal history indicated an increased likelihood that he would "have future encounters with the criminal justice system and an adverse impact on the safety of his family and community." Notably, the BIA expressly disavowed reliance on either the charge of committing a lewd act on a minor or Sorcia's questionable tax history. Reasoning that it would not be in the best interests of the United States to grant Sorcia cancellation of removal, the BIA dismissed his appeal on March 18, 2010. In the same decision, the BIA denied Sorcia's motion to reopen his removal proceedings.

On April 12, 2010, Sorcia petitioned this Court for review of the BIA's decision. The government filed a motion to dismiss, or in the alternative, transfer the petition. The government sought dismissal on the grounds that venue was improper in this Circuit under 8 U.S.C. § 1252(b). Alternatively, the government requested this Court to transfer the case to the Eleventh Circuit pursuant to 28 U.S.C. § 1631. Before turning to the merits of Sorcia's case, we address the government's motion.

II.

The government's motion to dismiss relied on 8 U.S.C. § 1252(b)(2), which states that a "petition for review [of an order of removal] shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." For reasons unique to the procedural history of this case, the parties dispute where the IJ completed the proceedings. Sorcia maintains that the proceedings were completed in Charlotte, North Carolina. The government argues that the proceedings were completed in Atlanta, Georgia.

Even assuming that Sorcia chose incorrectly when he appealed the BIA's decision to this Court, that error would not deprive this Court of subject matter jurisdiction. While we have not previously addressed the issue, courts in other circuits have unanimously held that § 1252(b)(2) is a nonjurisdictional venue provision. *See Avila v. U.S. Atty. Gen.*, 560 F.3d 1281, 1284 (11th Cir. 2009); *Moreno-Bravo v. Gonzales*, 463 F.3d 253, 262 (2d Cir. 2006); *Georcely v. Ashcroft*, 375 F.3d 45, 49 (1st Cir. 2004); *Nwaokolo v. I.N.S.*, 314 F.3d 303, 306 n.2 (7th Cir. 2002) (per curiam); *cf. Jama v. Gonzales*, 431 F.3d 230, 233 (5th Cir. 2005) (per curiam) (refusing to raise the nonjurisdictional venue issue sua sponte); *Bonhometre v. Gonzales*, 414 F.3d 442, 446 n.5 (3d Cir. 2005).[3] This conclusion is not surprising, insofar as § 1252(b)(2) is titled "Venue and forms." Also, the statute says nothing about "jurisdiction." *See Moreno-Bravo*, 463 F.3d at 259 ("In view of the extraordinary attention Congress directed toward federal jurisdiction over petitions for review in § 1252, . . . it is hard for us to believe that the legislature would then neglect to express a similarly clear intent—or any intent at all—to circumscribe jurisdiction . . . ."). Without hesitation, we join the six circuits concluding that § 1252(b)(2) is a nonjurisdictional venue provision. Accordingly, we decline the government's motion to dismiss this appeal based solely on Sorcia's failure to comply with § 1252(b)(2).[4]

---

[3]Indeed, he government expressly conceded in its brief that § 1252(b)(2) is not jurisdictional.

[4]As stated succinctly by the Seventh Circuit:

Provisions specifying where a suit shall be filed, as distinct from specifying what kind of court or other tribunal it shall be filed in, are generally considered to be specifying venue rather than jurisdiction. It would be usurpative for a federal court to assert jurisdiction over a case that the Constitution or statute had consigned to a state court, or even for a federal district court to assert jurisdiction over a case that should have been brought in a federal court of appeals . . . . But it is not usurpative for one federal court of appeals to assert jurisdiction . . . over a case that it would have

In the alternative, the government requests that this case be transferred to the Eleventh Circuit. The government cites a statute providing:

> Whenever . . . an appeal, including a petition for review of administrative action, is noticed for or filed with such a court *and that court finds that there is a want of jurisdiction*, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (emphasis added). However, as explained above, the failure to comply with § 1252(b)(2) does not affect our jurisdiction over Sorcia's petition, so arguably § 1631 is inapplicable to cure failures to comply with that venue provision. *See Moreno-Bravo*, 463 F.3d at 263 ("The case *sub judice*, of course, does not involve § 1631 because we do in fact have jurisdiction to consider the merits, being concerned only with venue and convenience."). Some courts have reached the opposite conclusion, however, essentially reasoning that "jurisdiction" as used in § 1631 was not meant to have a strictly technical meaning, and could also address transfer for lack of venue. *Rodriguez-Roman v. INS*, 98 F.3d 416, 424 (9th Cir. 1996) ("[F]or purposes of the transfer statute, a court lacks jurisdiction if venue does not lie.").

---

been authorized to adjudicate if only the effects of the order sought to be reviewed had been felt in one part of the country rather than another.

*State of New York v. Envtl. Prot. Agency*, 133 F.3d 987, 990 (7th Cir. 1998).

We hold that § 1631, which speaks exclusively of jurisdiction, does not mandate transfer where venue is lacking. However, this does not mean that we lack authority to transfer cases when we have jurisdiction but lack venue. Although the authority to transfer a case under § 1631 exists only when the transferring court lacks jurisdiction, courts have inherent power to transfer cases over which they have jurisdiction but not venue. *See Dornbusch v. C.I.R.*, 860 F.2d 611, 611-14 (5th Cir. 1988) (per curiam); *Alexander v. C.I.R.*, 825 F.2d 499, 501 (D.C. Cir. 1987). In *Dornbusch*, the Fifth Circuit analyzed cases decided prior to the enactment of § 1631 and noted that no court "which expressly addressed the matter held that it had no authority to transfer a case, over which it had jurisdiction but lacked venue, to another court of appeals having both jurisdiction and venue." 860 F.2d at 613-14 (collecting cases). Likewise, we follow this reasoning and hold that where we have jurisdiction but lack venue, we have inherent authority to transfer a case to another circuit where both venue and jurisdiction exist. However, we further conclude that in the exercise of such inherent authority it is appropriate, as in the related § 1631 context, to consider whether the "interest of justice" mandates transfer. *See Moreno-Bravo v. Gonzales*, 463 F.3d at 263. Here, we conclude that it would not be in the "interest of justice" to transfer this case to the Eleventh Circuit for several reasons.

First, Sorcia's confusion regarding where the proceedings were completed is understandable. After the proceedings began in Atlanta, Sorcia moved to change venue to Charlotte. The IJ denied the motion but later stated

> as you know, we're opening a court in Charlotte on November the 4th. Given that we've already gotten into this, I'm going to keep this on my docket. I will leave it up to you whether you wish to appear in Court or whether you want to appear in Charlotte via televideo.

Notice was sent to Sorcia's counsel indicating that a hearing would take place on February 4, 2009, in Atlanta. On December 15, 2008, a letter was sent to Sorcia's counsel indicating that "the location of the hearing has been changed" to Charlotte. Sorcia's counsel contacted the IJ in Atlanta, mentioning the change of location letter and stating that he preferred "to be present in Atlanta with my client and his family instead of Charlotte." Sorcia's counsel thus filed a second motion for change of venue with the Charlotte Court. On January 12, 2009, the Atlanta Immigration Court received this second change of venue motion and rejected it. On February 2, 2009, the IJ in Atlanta issued an order stating "Counsel and respondent may appear in Atlanta. DHS may appear either in person or via televideo from Charlotte."

The February 4, 2009, hearing—the final hearing on the merits—was conducted in Atlanta, with the government participating via videoconference from Charlotte. Indeed, the IJ stated "the Court [is] sitting in Atlanta." Yet, the transcript heading for that hearing indicated the "place" as Charlotte, North Carolina. Even the heading of the "Order of the Immigration Judge" indicated the location of the Immigration Court in Charlotte—though that conflicted with the statement in the order explaining "if the proceedings should be appealed . . . the oral decision will become the official opinion in this case." The oral decision was undisputedly issued from Atlanta. After viewing these facts as a composite, we conclude that Atlanta is the location where the proceedings were completed. *See Ramos v. Ashcroft*, 371 F.3d 948, 949 (7th Cir. 2004) (holding that even when teleconferencing takes place, immigration proceedings are completed "where the court is located and the order is issued"). Nevertheless, under these convoluted circumstances, it is understandable that Sorcia was confused as to the place of completion.

Further, because the matter has been thoroughly briefed and orally argued before this Court, we are reluctant to force the parties to relitigate in the Eleventh Circuit. *Cf. Bonho-*

*metre*, 414 F.3d at 446 n.5 ("[G]iven that this case has been thoroughly briefed and argued before us, and given that Mr. Bonhometre has waited a long time for the resolution of his claims, we believe it would be a manifest injustice to now transfer his case to another court for duplicative proceedings."); *accord Moreno-Bravo*, 463 F.3d at 263. Moreover, "'whether or not the suit has any possible merit bears significantly on whether the court should transfer,' and if it does not, the court should not waste the time of another court by transferring the matter." *Id.* at 263 (quoting *Phillips v. Seiter*, 173 F.3d 609, 610-11 (7th Cir. 1999)). The weakness of Sorcia's argument on the merits, discussed below, further counsels against transferring his petition to the Eleventh Circuit.

Finally, we are unpersuaded by the government's assertion that litigating this case in the Eleventh Circuit would be more convenient. The government's primary argument is that the BIA cited an Eleventh Circuit case for a proposition in its decision. Specifically, the BIA cited *Naijar v. Ashcroft*, 257 F.3d 1262 (11th Cir. 2001), to support the statement that a motion to remand must include a demonstration of prima facie eligibility for the relief sought. The government overlooks the fact that a federal regulation, 8 C.F.R. § 1003.2(c)(1), and a decision by the Supreme Court of the United States, *INS v. Abudu*, 495 U.S. 94, 104 (1988), were cited by the BIA in support of the same proposition. Further, that same proposition is supported by Fourth Circuit case law. *See Hussain v. Gonzales*, 477 F.3d 153, 157 (4th Cir. 2007). We therefore find the government's argument regarding convenience unavailing.

In sum, we deny the government's motion to dismiss or transfer this matter on the basis of improper venue. [5] We turn now to the merits of Sorcia's appeal.

---

[5]The government warns that failing to transfer this case would render the venue statute nugatory and invite forum shopping. This argument overlooks the case-specific factors, and particularly Sorcia's justifiable confusion regarding where these proceedings were completed, underpinning our decision to keep this case in this Circuit. Nothing in our approach should be construed as an indication to future petitioners whose cases were completed elsewhere that we will exercise our discretion to hear their cases.

III.

A.

Sorcia first argues that the IJ "did not properly weigh [Sorcia's] favorable and adverse equities" before denying the requested cancellation of removal. Brief of Petitioner at 10. The government argues that we do not have jurisdiction to review this discretionary decision. We agree.

The government correctly points to a statute stating that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
>> (i) any judgment regarding the granting of relief under section . . . 1229b . . . of this title.

8 U.S.C. § 1252(a)(2)(B). Subparagraph (D) clarifies that "[n]othing in subparagraph (B) . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D). Since cancellation of removal is placed in the IJ's discretion under 8 U.S.C. § 1229b, this Court has jurisdiction over Sorcia's appeal only if it concerns "constitutional claims or questions of law." *Id.*; *see also Jean v. Gonzales*, 435 F.3d 475, 479-80 (4th Cir. 2006) (holding that the court has no jurisdiction over any aspects of denial of relief under § 1229b except constitutional claims or questions of law).

Sorcia does not argue that his appeal presents constitutional claims. Nor, despite his contention to the contrary, does he raise a question of law. Instead, throughout his brief, Sorcia contends that the BIA should have given more weight to the positive factors and less weight to the negative factors affecting the exercise of the IJ's discretion. For instance, Sorcia argues that "[t]he IJ misapplied the law in failing to give the outstanding equity of Petitioner's length of residence in the United States the appropriate weight compared to the relatively minor factors." Brief of Petitioner at 6-7. Sorcia also maintains that the IJ gave insufficient weight to Sorcia's family ties and steady employment.

However, a challenge to the weight attributed to certain factors relevant to immigration determinations does not present a question of law. *Higuit v. Gonzales*, 433 F.3d 417, 419-20 (4th Cir. 2006). In *Higuit*, the petitioner challenged an IJ's denial of adjustment of his alien status, another form of discretionary relief addressed in 8 U.S.C. § 1252(a)(2)(B). *Id.* at 419. Petitioner argued "that he ha[d] raised a question of law because the IJ determined that the persecution carried out in the Philippines outweighed his commendable conduct in the United States." *Id.* at 420. On appeal, we concluded that we lacked jurisdiction, stating,

> [t]his does not present a question of law. In making the discretionary adjustment of status determination, the IJ balanced Higuit's positive and negative attributes and did not rule in Higuit's favor. . . . Were Higuit correct that he has presented a question of law, almost every decision denying discretionary relief would henceforth be subject to judicial review. We are not free to convert every immigration case into a question of law and thereby undermine Congress's decision to grant limited jurisdiction over matters committed in the first instance to the sound discretion of the Executive.

*Id.* at 420. In *Jean,* we considered perhaps a more closely analogous decision by the BIA: refusal to grant a waiver of inadmissibility. *Id.*, 435 F.3d at 480-81. The court noted

> Jean argues only that the immigration judge drew the wrong factual conclusions from the evidence and then determined these conclusions outweighed any factors supporting a favorable exercise of discretion. In turn, Jean contends the BIA perpetuated this error by adopting the immigration judge's inaccurate view of the evidence. These are discretionary decisions, however, that we have no jurisdiction to review.

*Id.* at 480. Here, as in *Higuit* and *Jean*, because Sorcia challenges only the weight given to certain factors by the IJ, we conclude that we lack jurisdiction to review this assignment of error.

Nonetheless, Sorcia further attempts to cast these challenges as questions of law by saying that the BIA was acting contrary to its precedent. He contends that "where cases have the same or similar facts as precedent cases, it follows that the BIA should apply the same standards." Brief of Petitioner at 18. In support of his position, Sorcia cites *Hernandez v. Ashcroft*, 345 F.3d 824 (9th Cir. 2003). In that case, the Ninth Circuit held that where previous cases stated that the nonviability of a marriage was not a basis for rejecting a petition, the BIA's decision to rule on that basis was contrary to law, not a discretionary determination. *Id.* at 847.

*Hernandez* is distinguishable from the case before us. Here, Sorcia's argument is not that the BIA considered improper factors, but that it gave the improper amount of weight to the proper factors. For the reasons explained above, we lack jurisdiction to consider that question. *Cf. Argueta v. Holder*, 617 F.3d 109, 112 (2d Cir. 2010) ("[A]ll but one of Argueta's claims lie beyond our jurisdiction because they are directed to

the manner in which the IJ balanced the equities in denying his application for discretionary relief . . . .").

Sorcia also argues that the BIA erred as a matter of law when it considered the charge of committing a lewd act against a minor. But the BIA expressly stated, "we agree with respondent that little weight should be afforded to his arrest for lewd conduct, as the case was not prosecuted and the police report entered into evidence was uncorroborated . . . ." We note that the BIA cited the same case in its decision, *Matter of Arreguin*, 21 I. & N. Dec. 38 (BIA 1995), that Sorcia cites to argue that the scope of the BIA's inquiry was improper.

Moreover, *Arreguin* did not indicate that it was per se improper to consider an arrest report. *See id.* Rather, the BIA there stated that "we are hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein." *Id.* at 42. Therefore, insofar as the BIA declined to give substantial weight to Sorcia's charge, it was following, rather than contradicting, precedent.

In sum, Sorcia asserts no constitutional claims or questions of law regarding the denial of his petition for cancellation of removal. As such, we lack jurisdiction to rule on this issue.

## B.

Sorcia also challenges the denial of his motion to remand. [6]

---

[6]The BIA can remand when an alien seeks reconsideration of a decision or when an alien seeks to have the proceedings reopened. "Although these motions are often treated interchangeably, a request for reconsideration is based upon 'errors of fact or law in the prior Board decision,' 8 C.F.R. § 1003.2(b)(1), whereas a request to reopen proceedings results from changed circumstances and specifically contemplates that an alien will do so 'for the purpose of submitting an application for relief,' 8 C.F.R.

The authority to reopen an immigration case derives from 8 C.F.R. § 1003.2 rather than any of the provisions enumerated in the gatekeeping clause of 8 U.S.C. § 1252(a)(2)(B). However, we have previously stated that the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B) applies where "the basis for the discretionary decision [to deny a motion to remand] addresses the merits of an enumerated provision." *Obioha*, 431 F.3d at 406. In contrast, if the decision on the motion to remand is based on a procedural failure or a determination that the petitioner is statutorily ineligible for relief, we have jurisdiction to review the matter. *Id.* at 406-07.

To determine whether we have jurisdiction to review the BIA's denial of Sorcia's motion to remand, we must consider the BIA's basis for the denial. The BIA stated:

> While the evidence submitted establishes an alternate avenue for the respondent to obtain relief, the approval of the visa petition does not change the fact that he does not merit a favorable exercise of discretion. Accordingly, for the same reasons that he was denied cancellation [of removal], the respondent would be unlikely to prevail on an adjustment application. We will therefore deny the motion.

(J.A. 5.) Here, "because the BIA made a discretionary decision on the merits of an enumerated provision, the fact that it

---

§ 1003.2(c)(1)." *Obioha*, 431 F.3d at 408. Sorcia bases his motion on the fact that he had filed for an immigrant visa (specifically an immigrant relative visa supported by his daughter, a U.S. citizen). In other words, citing changed circumstances, Sorcia sought a remand to allow for adjustment of his immigration status, a form of "relief." As such, Sorcia's motion was one to remand for the reopening of his case. *See* 8 C.F.R. § 1003.2. ("A motion to reopen a decision rendered by an Immigration Judge . . . that is filed while an appeal is pending before the Board, may be deemed a motion to remand for further proceedings before the Immigration Judge . . . from whose decision the appeal was taken. Such motion may be consolidated with, and considered by the Board in connection with, the appeal to the Board.").

did so through denying a motion to reopen did not save appellate jurisdiction." *Id.* at 407. Therefore, we conclude that we lack jurisdiction to review the BIA's denial of Sorcia's motion to remand.

## IV.

In sum, because Sorcia presents no issues on appeal over which we possess subject matter jurisdiction, his appeal must be

*DISMISSED*.