**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-1163**

---

EDWIN GIOVANNI GARCIA ROGEL,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

---

On Petition for Review of an Order of the Board of Immigration Appeals

---

Argued:  May 5, 2022                          Decided:  September 15, 2022

---

Before GREGORY, Chief Judge, and DIAZ, and THACKER, Circuit Judges.

---

Petition granted in part and denied in part by unpublished per curiam opinion.  Judge Diaz wrote an opinion concurring in part and concurring in the judgment.

---

**ARGUED:**  Benjamin Ross Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner.  Tim Ramnitz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Xavier Racine, PRIALE & RACINE PLLC, Fairfax, Virginia, for Petitioner.  Brian Boynton, Acting Assistant Attorney General, Shelley R. Goad, Assistant Director, Kristen A. Giuffreda, Office of the Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Edwin Garcia Rogel ("Petitioner") was deported after his petition for cancellation of removal was denied by an Immigration Judge ("IJ") and the denial was affirmed by a single member panel of the Board of Immigration Appeals (the "BIA"). The IJ held that Petitioner met nearly every requirement for cancellation of removal but denied relief because he concluded that Petitioner lacked "good moral character" based on allegations that Petitioner sexually abused his nine year old niece.

We conclude that we possess jurisdiction to address Petitioner's arguments, which raise "constitutional claims or questions of law" that we are permitted to review. 8 U.S.C. § 1252(a)(2)(D). We grant the petition for review because the IJ's good moral character determination was based solely on an uncorroborated police report detailing the sexual abuse allegations, in violation of the BIA's contrary directive from *In re Arreguin de Rodriguez*, 21 I. & N. Dec. 38 (B.I.A. 1995). We further hold that because the IJ did not abide by this binding precedent, Petitioner's appeal to the BIA should have been referred to a three member panel instead of decided by a single member. However, we reject Petitioner's assertions that the police report was not properly authenticated and that the IJ was obligated to consider live testimony from Petitioner's wife and sister-in-law during Petitioner's deportation hearing.

I.

A.

Petitioner, a native and citizen of El Salvador, entered the United States without inspection in August 2005 and has lived continuously in the United States since then. At

the time removal proceedings were instituted against him, Petitioner lived with his wife, a naturalized United States citizen, and his three stepchildren in Alexandria, Virginia. His wife's relatives lived nearby, and the two families socialized often.

In October 2019, Petitioner's nine year old niece, "G,"[1] told her parents that Petitioner had touched her "private parts" over the course of several years. A.R. 192.[2] According to the police report detailing the incident, when Petitioner's in-laws confronted him about G's allegations, Petitioner admitted to inappropriate contact with G. Although Petitioner's wife urged her relatives not to go to the police with their complaints, Petitioner's sister-in-law reported G's accusations to local law enforcement.

The police report notes that G reiterated her allegations during a forensic interview conducted as part of the investigation. The report also details a "controlled call" between Petitioner and his brother-in-law, during which Petitioner "accept[ed]" that he "touch[ed]" G. A.R. 199. However, Petitioner denied G's allegations during his own interview with law enforcement.

Following the investigation, Petitioner was arrested in December 2019 and charged with two counts of aggravated sexual battery, in violation of Virginia Code § 18.2-67.3, and two counts of penetration of the mouth of a child with lascivious intent, in violation of Virginia Code § 18.2-370.6. However, both G and Petitioner's sister-in-law later recanted

---

[1] Since G is a minor, we refer to her by her first initial only.

[2] Citations to the "A.R." refer to the Administrative Record filed by the parties in this case.

3

their accusations.  As a result, the prosecution dismissed the charges against Petitioner

*nolle prosequi*.[3]

B.

On the same day the sexual abuse charges were dismissed, Petitioner was placed in

immigration detention, and removal proceedings were commenced against him.  Petitioner

conceded removability but argued that he was eligible for cancellation of removal. In

support of his application for cancellation of removal, Petitioner submitted letters from his

wife and sister-in-law (the mother of G) attesting to his character, as well as other

documents.  He also filed a motion to expedite his hearing before the IJ in which he

represented that his wife and sister-in-law intended to testify on his behalf, but he did not

file a witness list in advance of the hearing.

The hearing was held on July 24, 2020.  Over Petitioner's objection, the IJ admitted

into evidence the police report summarizing the investigation of G's sexual abuse

allegations.  The IJ also declined to hear live testimony from Petitioner's wife and sister-

in-law, citing time constraints and his desire to issue a quick decision on Petitioner's

application for cancellation of removal.  Based on the information in the police report, the

IJ ultimately determined that Petitioner was not eligible for cancellation of removal

because he lacked good moral character.  Accordingly, the IJ denied relief to Petitioner and

ordered him deported.

---

[3] In Virginia, the dismissal of a charge *nolle prosequi* is neither a declaration of innocence nor an acquittal, and the prosecution may elect to bring the same charges at a later date.  *See Duggins v. Commonwealth*, 722 S.E.2d 663, 666 (Va. Ct. App. 2012).

Petitioner appealed the IJ's decision to the BIA, which referred Petitioner's case to a single member for review. The single member held that the IJ did not err by admitting the police reports or by rejecting live testimony from Petitioner's wife and sister-in-law. The BIA further determined that Petitioner failed to demonstrate his good moral character and, therefore, affirmed the IJ's decision.

Petitioner timely petitioned this Court for review of the denial of cancellation of removal.

II.

A.

We begin by assessing our jurisdiction to consider the petition for review in this case. As a general rule, we have no jurisdiction to review the decisions of the IJ and the BIA to deny an application for cancellation of removal. *Obioha v. Gonzales*, 431 F.3d 400, 405 (4th Cir. 2005); *see* 8 U.S.C. § 1252(a)(2)(B)(i) (providing that "no court shall have jurisdiction to review[]" denials of discretionary relief, including cancellation of removal). However, we may nonetheless consider "constitutional claims or questions of law" raised by a petitioner who was denied such relief. 8 U.S.C. § 1252(a)(2)(D); *Sorcia v. Holder*, 643 F.3d 117, 124 (4th Cir. 2011) ("Since cancellation of removal is placed in the IJ's discretion under 8 U.S.C. § 1229b, this Court has jurisdiction over Sorcia's appeal only if it concerns 'constitutional claims or questions of law.'" (quoting 8 U.S.C. § 1252(a)(2)(D)). We conclude that Petitioner's claims fall within this exception to the general rule.

5

The issues raised in the petition are fundamentally legal ones. Specifically, Petitioner asserts that the IJ improperly admitted the police report and failed to abide by binding precedent when considering the report. He also argues that he was denied due process when the IJ declined to hear live testimony from his wife and sister-in-law. The efforts of the Attorney General to construe these issues as unreviewable discretionary decisions because the IJ was ultimately tasked with deciding whether cancellation of removal was appropriate are unavailing. Ruling on Petitioner's arguments does not require us to re-weigh the evidence that was before the IJ, nor does it obligate us to second-guess the IJ's reasons for denying relief. *See Sorcia*, 643 F.3d at 125 ("[A] challenge to the weight attributed to certain factors relevant to immigration determinations does not present a question of law."). Rather, we must answer the purely legal questions of whether the IJ properly admitted and considered the police report and whether Petitioner's due process rights were violated when his wife and sister-in-law were not permitted to testify during the hearing. We now proceed to these questions.

## B.

## 1.

Petitioner argues that the IJ erred by admitting the police report detailing the investigation of the sexual abuse charges against him because the report was not properly authenticated. He asserts that the police report qualifies as an "official record" that should have been authenticated pursuant to 8 C.F.R. § 287.6(a) before being admitted into evidence. That regulation provides, "In any [immigration] proceeding . . . [a domestic] official record or entry therein, when admissible for any purpose, shall be evidenced by an

6

official publication thereof, or by a copy attested by the official having legal custody of the record or by an authorized deputy." 8 C.F.R. § 287.6(a).

The IJ agreed with Petitioner that the police report "was not authenticated," but he nonetheless admitted the report over Petitioner's objection. A.R. 69. The IJ reasoned that the report did not need to be authenticated because it was "being served not for the purpose of proving a criminal conviction and not for the purpose of demonstrating the existence of a conviction, but rather, to address an element which the respondent bears the burden of proof, that being, among other things, good moral character and discretion." *Id.* at 69–70.

Notwithstanding that the police report was not authenticated pursuant to 8 C.F.R. § 287.6(a), the IJ did not err by admitting the police report into evidence at Petitioner's deportation hearing. "The Federal Rules of Evidence do not apply in immigration proceedings, and evidentiary determinations are limited only by due process considerations." *Anim v. Mukasey*, 535 F.3d 243, 256 (4th Cir. 2008). In other words, the admission of evidence is proper if "the evidence is probative and its use is fundamentally fair." *Id.* "In this context fairness is closely related to the reliability and trustworthiness of the evidence." *Id.* (internal quotation marks omitted). That standard is met in this case.

Importantly, although Petitioner casts his argument as an authentication issue, he does not argue that the police report is not authentic, i.e., that it is not a police report documenting the investigation of the sexual abuse allegations against him. Rather, he disputes the truth of those allegations. But the fact that Petitioner denies sexually abusing G does not render the police report inherently unreliable or untrustworthy, such that the IJ's consideration of the report was fundamentally unfair. Petitioner had a copy of the

7

report prior to the deportation hearing and was aware that the contents of the police report would be the principal focus of the hearing. As the IJ explained his decision to admit the police report, "the entire record denying [the sexual abuse allegations] further lends support to as to why these facts detailed in the police report and in the investigative report are relevant to these proceedings." A.R. 70. Therefore, we conclude that the IJ's admission of the police report did not violate Petitioner's due process rights.

Moreover, "certification pursuant to 8 C.F.R. § 287.6 'is not the exclusive means by which to authenticate . . . document[s]'" in an immigration proceeding. *Tassi v. Holder*, 660 F.3d 710, 723 (4th Cir. 2011) (quoting *Lin-Jian v. Gonzales*, 489 F.3d 182, 192 (4th Cir. 2007)). The IJ in *Tassi* excluded evidence that had not been authenticated as set forth in 8 C.F.R. § 287.6(b), even though the Government did not challenge the authenticity of the evidence or otherwise object to its admission. *Id.* We held that since "Tassi had no cause to defend [the evidence's] authenticity during the IJ hearings," the IJ should have permitted her "to authenticate these documents through another method" instead of excluding the evidence altogether. *Id.* (quoting *Lin-Jian*, 489 F.3d at 192). In short, authentication in the manner specified in 8 C.F.R. § 287.6 is not per se required, and if the IJ is inclined to exclude evidence on that basis, the IJ should generally offer the party seeking to admit the evidence an opportunity to demonstrate its authenticity before excluding it. *See Lin-Jian*, 489 F.3d at 192. However, doing so was unnecessary in this case because Petitioner did not argue -- and does not argue now -- that the police report was not authentic. Accordingly, the IJ did not err by admitting the police report into evidence even though it was not authenticated pursuant to 8 C.F.R. § 287.6(a).

8

2.

Petitioner further argues that even if the police report was properly admitted into evidence, the IJ erred by giving the report substantial weight, contrary to *In re Arreguin de Rodriguez*, 21 I. & N. Dec. 38 (B.I.A. 1995). The applicant in that case, a lawful permanent resident of the United States, sought a waiver of admissibility after she was placed in exclusion proceedings following her conviction for unlawfully importing marijuana. *Arreguin*, 21 I. & N. Dec. at 39. The Government in *Arreguin* "presented documentation regarding the applicant's arrest in 1980 on suspicion of smuggling aliens," and although "prosecution was declined," the IJ "concluded that th[e] incident was a negative factor to be considered in exercising discretion." *Id.* at 42. On appeal of the denial of relief, the BIA explained that it was "hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein." *Id.* Because "the applicant conceded that the arrest took place but admitted to no wrongdoing" and the allegations were not otherwise corroborated, the BIA gave the arrest report "little weight." *Id.*

We agree with Petitioner that the IJ in this case did not comply with *Arreguin*. *Arreguin* directs that arrest records that did not result in a conviction or are not corroborated should not be given "substantial weight" in the decisionmaking process. 21 I. & N. Dec. at 42; *see Sorcia*, 643 F.3d at 126 ("[I]nsofar as the BIA declined to give substantial weight to Sorcia's charge, it was following, rather than contradicting, precedent."). Although the BIA in *Arreguin* did not quantify the meaning of "substantial weight," the term surely encompasses the dispositive weight that the IJ accorded the police report at issue here.

9

Indeed, the IJ expressly found, "*based on the investigative report*," that Petitioner "failed to carry his burden to demonstrate that he has been a person of good moral character during the relevant time period." A.R. 75 (emphasis supplied). The IJ -- perhaps reasonably -- determined that the information in the police report was more credible than Petitioner's own testimony, but *Arreguin* did not permit the IJ to rely *exclusively* on the police report in the absence of other evidence to support the information therein.

*In re Teixeira*, 21 I. & N. Dec. 316 (B.I.A. 1996), which the BIA cited for the proposition that a police report "may be used for discretionary determinations," A.R. 4, and *In re Thomas*, 21 I. & N. Dec. 20 (B.I.A. 1995), which the Attorney General cites to support his argument that the IJ properly considered the police report, do not conflict with *Arreguin*. In *Teixeira*, the BIA explained, "The question posed by the respondent's application for discretionary relief is whether he warrants a favorable exercise of discretion. The police report may be helpful in answering that question, because it bears on the issue of the respondent's <u>conduct</u> when he was arrested, and this in turn is germane to whether the respondent merits discretionary relief from deportation." 21 I. & N. Dec. at 321 (emphasis in original). Similarly, in *Thomas*, the BIA remarked, "the probative value of and corresponding weight, if any, assigned to evidence of criminality will vary according to the facts and circumstances of each case and the nature and strength of the evidence presented." 21 I. & N. Dec. at 24. As we have previously held, "*Arreguin* did not indicate that it was per se improper to consider an arrest report." *Sorcia*, 643 F.3d at 126. Rather, *Arreguin* simply limits the weight an IJ should give to a police report that did not result in a conviction or is not otherwise corroborated. 21 I. & N. Dec. at 42. This is entirely

10

consistent with *Teixeira* and *Thomas*. "[A]n agency may depart from its own precedent only if it offers a 'reasoned explanation' for doing so." *De Leon v. Holder*, 761 F.3d 336, 344 (4th Cir. 2014) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009)). Neither the IJ nor the BIA did so with respect to the clear departure from *Arreguin* when considering the police report at issue in this case. Therefore, we conclude that the IJ erroneously accorded the police report dispositive weight in finding that Petitioner lacked good moral character.

3.

Because the IJ did not comply with *Arreguin*, a single member of the BIA was not authorized to hear Petitioner's appeal of the IJ's decision. By default, an appeal to the BIA "shall be assigned to a single . . . member for disposition" unless it "meets the standards for assignment to a three-member panel under [8 C.F.R. § 1003.1(e)(6)]." 8 C.F.R. § 1003.1(e). But "if a case does meet the standard for adjudication by a three-member panel, a single member *shall not* decide it." *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 162–63 (4th Cir. 2009) (emphasis in original). One of those circumstances requiring review by a three member panel is when the IJ's decision "is not in conformity with the law or with applicable precedents." 8 C.F.R. § 1003.1(e)(6)(iii). Petitioner's appeal of the IJ's decision therefore should have been adjudicated by a three member panel of the BIA.

C.

Petitioner also argues that the IJ violated his due process rights by not allowing his wife and sister-in-law to provide live testimony at his deportation hearing. Although both Petitioner and the Government expressed a desire to have the witnesses testify, the IJ

declined to hear the testimony because of time constraints. The IJ nonetheless admitted into evidence two "fairly detailed" letters written by Petitioner's wife, A.R. 175, as well as one shorter letter written by his sister-in-law and a proffer from Petitioner's counsel about the testimony of Petitioner's sister-in-law. We hold that the IJ's consideration of this evidence satisfied Petitioner's due process right to present witnesses in his favor.

In the immigration context, "[d]ue process requires, at a minimum, that an alien be given '(1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard.'" *United States v. Lopez-Collazo*, 824 F.3d 453, 461 (4th Cir. 2016) (quoting *United States v. El Shami*, 434 F.3d 659, 665 (4th Cir. 2005)). "The right to offer the testimony of witnesses . . . is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). But it does not follow that due process always requires the IJ to hear *live* testimony. "[W]hat constitutes being heard at 'a meaningful time and in a meaningful manner' will have different meanings in different circumstances, and due process only 'calls for such procedural protections as the particular situation demands." *Rusu v. U.S. Immigration & Naturalization Serv.*, 296 F.3d 316, 321 (4th Cir. 2002) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)).

In order to succeed on a due process claim involving an immigration proceeding, the petitioner must demonstrate "(1) that a defect in the proceeding rendered it fundamentally unfair and (2) that the defect prejudiced the outcome of the case." *Anim*, 535 F.3d at 256. Petitioner has not made this showing with respect to the testimony of his wife and sister-in-law. He offers no reason, aside from unfounded speculation that the IJ

12

would have given more weight to -- and could have been persuaded by -- their live testimony, why their letters and the proffer made by his counsel about his sister-in-law's testimony were insufficient to inform the IJ that they did not believe Petitioner sexually abused his niece and that he has good moral character. Therefore, the IJ's failure to hear live testimony from Petitioner's wife and sister-in-law was neither fundamentally unfair nor prejudicial to Petitioner. "[T]he exclusion of live testimony is prejudicial when the testimony would have added something that was otherwise missing from the record." *Atemnkeng v. Barr*, 948 F.3d 231, 242 n.7 (4th Cir. 2020) (emphasis deleted). That is not the case here.

Moreover, perhaps the IJ would have allotted more time for Petitioner's hearing had Petitioner properly filed the required witness list notifying the IJ in advance of the hearing that he intended to call his wife and sister-in-law to testify. Petitioner's failure to comply with this requirement does not generate a due process violation.

### III.

In conclusion, we grant the petition for review so that the IJ may reconsider the police report in light of *In re Arreguin de Rodriguez*, 21 I. & N. Dec. 38 (B.I.A. 1995).[4] We deny the petition for review as to Petitioner's arguments that the police report was not

---

[4] Petitioner requests that we order his return to the United States so that he may participate in further proceedings in this case. However, we decline to do so because the IJ's reconsideration of the police report is unlikely to warrant additional testimony by Petitioner, who testified fully at the hearing.

properly authenticated and that the IJ was required to hear testimony from Petitioner's wife and sister-in-law.

*PETITION GRANTED IN PART AND DENIED IN PART*

DIAZ, Circuit Judge, concurring in part and in the judgment:

There's no mistaking that the sexual-abuse allegations against Edwin Giovanni Garcia Rogel are serious and (if true) disturbing. And there's no doubt that, under the right circumstances, immigration judges may consider such accusations and related police reports in deciding whether to cancel a noncitizen's removal.

But these were not the right circumstances. The government offered no evidence to authenticate the police report on which the immigration judge relied—contrary to Department of Homeland Security regulations. And Board of Immigration Appeals precedent limits an immigration judge's discretion to give dispositive weight to police reports documenting criminal allegations, like those against Garcia Rogel, not resulting in a conviction and lacking corroborative evidence.

On appeal, the Board simply ignored Garcia Rogel's meritorious arguments—and its own precedent—altogether. Accordingly, I join in our decision finding jurisdiction, granting Garcia Rogel's petition for review, and concluding that his appeal should have been considered by a three-member Board panel. I also agree that the immigration judge didn't violate Garcia Rogel's due-process rights by refusing to hear his wife and sister-in-law's live testimony at his deportation hearing. But I write separately to explain why the immigration judge erred in admitting (over Garcia Rogel's objection) the unauthenticated police report.

I.

At the deportation hearing, the immigration judge admitted a Virginia state police report discussing Garcia Rogel's sexual-misconduct charges. The judge then relied exclusively on the report to decide that Garcia Rogel lacked good moral character and, in turn, to deny discretionary relief. *See* A.R. 75 ("[B]*ased on the investigative report*, the Court finds that the respondent has failed to carry his burden to demonstrate that he has been a person of good moral character during the relevant time period." (emphasis added)).

I agree that the immigration judge erred in giving the report dispositive weight in deciding whether to grant cancellation of removal, and that this error prejudiced Garcia Rogel. But as a threshold matter, there was no evidence of the report's authenticity. Garcia Rogel objected on that basis, citing 8 C.F.R. § 287.6(a): "In any proceeding under this chapter, an official record or entry therein, when admissible for any purpose, shall be evidenced by an official publication thereof, or by a copy attested by the official having legal custody of the record or by an authorized deputy."

Before I explain why Garcia Rogel's objection was well taken, I pause to address a quirk in the regulatory scheme not addressed by the parties, the immigration judge, or the Board. 8 C.F.R. § 287.12 provides:

> With regard to this part [which includes § 287.6(a)], these regulations provide internal guidance on specific areas of law enforcement authority. These regulations do not, are not intended to, and shall not be construed to exclude, supplant, or limit otherwise lawful activities of the Department or the Secretary. These regulations do not, are not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal. The Secretary shall have exclusive authority to

16

enforce these regulations through such administrative and other means as he may deem appropriate.

We have suggested in dicta that 8 C.F.R. § 287.12 precludes courts from *ever* finding prejudice when the government violates the § 287 rules. *See Yanez-Marquez v. Lynch*, 789 F.3d 434, 474 (4th Cir. 2015). But I reject that notion.

For one, § 287.12 states that the regulations are meant to "provide internal guidance on specific areas of law enforcement authority." And most of the regulations provide directions for law enforcement: Officers must advise detainees of their rights, for example, and have reasonable grounds for warrantless arrests. *See* 8 C.F.R. §§ 287.3(c), .8(c)(2)(i).

But § 287.6 is different because it deals with adjudicatory procedure, not "law enforcement authority" and it binds petitioners and the government equally. *See, e.g.*, *Ido v. U.S. Att'y Gen.*, 590 F. App'x 897, 898–99 (11th Cir. 2014) (holding that the Board did not err in discounting asylum applicant's unauthenticated arrest warrant). Because this specific regulation isn't "internal guidance" on "law enforcement," § 287.12 shouldn't apply.

The agency has also said that § 287.12 won't prevent any party "from pursuing relief for alleged violations of the Constitution or laws of the United States." Enhancing the Enforcement Authority of Immigration Officers, 59 Fed. Reg. 42,406-01 (Aug. 17, 1994). And "[a]uthentication of documents in the government's possession is required in deportation proceedings in order to satisfy due process." *Flores v. Sessions*, 684 F. App'x 603, 604 (9th Cir. 2017). Since the authentication requirements implicate Garcia Rogel's constitutional right to due process, § 287.12 is no bar to relief.

17

With that procedural underbrush cleared, I next explain why the immigration judge (and the Board) erred in rejecting Garcia Rogel's authentication objection.

## II.

The immigration judge agreed that the report was "not authenticated." A.R. 111. Even so, the judge overruled the objection because the government wasn't offering it "for the purpose of sustaining a charge of removal." *Id.* Respectfully, that was error.

"We have recognized that an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination." *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999). To show cause for relief, a petitioner must show "(1) a violation (2) of a regulation intended for the [noncitizen's] benefit (3) that causes prejudice to the [noncitizen]." *Yanez-Marquez*, 789 F.3d at 474 (citing *Morgan*, 193 F.3d at 266).

The government appears to suggest that, to warrant relief on this issue, Garcia Rogel had to show "that the immigration judge's admission of unauthenticated evidence . . . violated his right to due process in his removal proceedings." Respondent's Br. at 20. My friends agree. *See* Majority Op. at 7–8. I can't. I recognize that's the usual test for evidentiary challenges in immigration proceedings, where the Federal Rules of Evidence don't apply. *See Anim v. Mukasey*, 535 F.3d 243, 256 (4th Cir. 2008). But because an

18

immigration regulation sets out the authentication requirement here, *Morgan*'s three-part test[1] defines our inquiry.

First, the immigration judge violated the regulation.  The judge acknowledged that the police report wasn't authenticated but admitted it anyway.  The regulation requires that in immigration proceedings, any official record, "when admissible *for any purpose*, *shall*" be authenticated.  8 C.F.R. § 287.6(a) (emphasis added).  So the fact the government was offering it for a purpose other than sustaining a removal charge was irrelevant.

Second, § 287.6(a) benefits noncitizens in removal proceedings "because it protects against the use of inauthentic records to resolve cases." *In re Thiago Assereui de Oliveira*, 2010 WL 4509747, at *2 (B.I.A. Nov. 2, 2010).  And third, I think it beyond doubt that the error prejudiced Garcia Rogel.

The majority (and the government) insist otherwise because (they say) Garcia Rogel "does not argue that the police report is not authentic."  Majority Op. at 7; *see also* Respondent's Br. at 27.  But this view misconstrues the prejudice inquiry.

We don't ask whether, in hindsight, the report was authentic.  Nor do we ask what the result would have been had the government followed the rules.  Rather, we ask whether the outcome would have been the same *without the inadmissible evidence*.[2]  *Cf. Iran v. Immigr. & Naturalization Serv.*, 656 F.2d 469, 473 (9th Cir. 1981) (setting aside a

---

[1] As enumerated by *Yanez-Marquez*, 789 F.3d at 474.

[2] This standard mirrors the usual evidentiary test, which examines if "the defect prejudiced the *outcome* of the case." *Anim*, 535 F.3d at 256 (emphasis added).

19

deportation order because the government didn't authenticate its evidence at the hearing). And here (as we hold today), the evidence was dispositive on the immigration judge's decision to deny Garcia Rogel's petition for cancellation.

My friends say that § 287.6 isn't "the exclusive means by which to authenticate" official documents. Majority Op. at 8 (quoting *Tassi v. Holder*, 660 F.3d 710, 723 (4th Cir. 2011)). I agree.

But *Tassi* isn't helpful here because the immigration judge found that the police report wasn't authenticated by *any* means. A.R. 111 ("[T]he Court will note that [the report] is not authenticated."). And "there is no question that authentication is necessary." *Iran*, 656 F.2d at 472; *see also Su Mei Yan v. Att'y Gen. of U.S.*, 391 F. App'x 226, 231 (3d Cir. 2010) (affirming the Board's refusal to consider a certificate because "the document had not been authenticated by *any* means"). So it's of no moment that there may be many ways one *might* authenticate a document.

The government says that we owe official documents a "presumption of regularity," obviating its burden to authenticate such records. *See* Respondent's Br. at 30 (cleaned up). It cites *Espinoza v. I.N.S.*, in which the Ninth Circuit explained,

> The burden of establishing a basis for exclusion of evidence from a government record falls on the opponent of the evidence, who must come forward with enough negative factors to persuade the court not to admit it. This rule is premised on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports.

45 F.3d 308, 310 (9th Cir. 1995) (cleaned up).

20

But there, the relevant agency director *had* certified the challenged document. *See id.* In fact, the court noted that the certification complied with 8 C.F.R. § 287.6(a). *Id.* And our sister court expressly distinguished another case "in which [it] found documents not properly authenticated" because the agency "failed to introduce *any* proof of authenticity, or any proof from which the immigration judge could infer that the form was a true document." *Id.* (emphasis added) (quoting *Iran*, 656 F.2d at 473). No presumption of regularity excuses the government sidestepping its baseline authentication requirements.

On appeal, the Board simply ignored Garcia Rogel's argument on the police report's authenticity. Rather, it summarily decided that "the Immigration Judge did not err in admitting and considering the police report because Immigration Judges may consider probative, relevant evidence." A.R. 4. It didn't mention 8 C.F.R. § 287.6(a) or explain why the document's authenticity was (apparently) irrelevant.

We should have granted Garcia Rogel's petition for review on this ground alone. It was the government's burden to authenticate the police report. And I see no reason to not hold them to it. But because we today grant relief based on the immigration judge's error in giving the police report dispositive weight when deciding Garcia Rogel's petition for cancellation of removal, I concur in the judgment.