**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-2238**

_____

SYED ALI RAZA,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

_____

On Petition for Review of an Order of the Board of Immigration Appeals.

_____

Submitted: July 15, 2024                      Decided: August 29, 2024

_____

Before WILKINSON and HEYTENS, Circuit Judges, and TRAXLER, Senior Circuit Judge.

_____

Petition for review denied by unpublished per curiam opinion.

_____

**ON BRIEF:** Sandra Greene, GREENEFITZGERALD ADVOCATES AND CONSULTANTS, York, Pennsylvania, for Petitioner. Brian Boynton, Principal Deputy Assistant Attorney General, Civil Division, Cindy S. Ferrier, Assistant Director, Micah Engler, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.


Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Syed Ali Raza petitions for review of an order of the Board of Immigration Appeals dismissing his appeal from the Immigration Judge's denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture. We deny the petition for review.

I.

Raza, who was born in 1972, is a native and citizen of Pakistan. He is a Shia Muslim, which is a minority sect in Pakistan; the great majority of the population is Sunni Muslim. According to Raza, his father was a famous poet in Pakistan, and Raza himself was a famous religious singer who competed nationally and internationally. Because of threats from Sunnis, Raza's father fled to Canada and became a Canadian citizen. His father returned to Pakistan in 2011 and died a few months later. Raza's mother remained in Pakistan until her death in 2022, and two of his siblings still live in Pakistan.

In March 2001, Raza used a fraudulent passport to enter the United States under the Visa Waiver program. Raza's application for asylum was denied in 2003. *See* J.A. 46. In 2016, Raza became a lawful permanent resident of the United States as a result of his third marriage to a United States citizen. *See* J.A. 523.

On September 17, 2019, Raza pleaded guilty to aggravated identity theft, *see* 18 U.S.C. § 1028A(a)(1), and conspiracy to commit access device fraud (the "Fraud Conspiracy"), *see* 18 U.S.C. § 1029(a)(2). He was sentenced to a total of 36 months. Rather than report to prison, Raza fled to Canada. He was apprehended and paroled into the United States on September 3, 2020. *See* J.A. 46-47.

2

The Department of Homeland Security initiated removal proceedings against Raza in October 2022, alleging that he was subject to removal as a noncitizen convicted of a crime of moral turpitude. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I). Raza filed applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Raza claimed that because he was a famous religious singer, he would be subject to persecution by fundamentalist Sunni groups if he returned to Pakistan.

After a hearing, the IJ concluded that Raza's conviction for the Fraud Conspiracy was a crime of moral turpitude and that Raza was therefore subject to removal. *See* J.A. 57. As to Raza's asylum claim, the IJ determined that Raza was ineligible because Raza had previously applied for and been denied asylum. *See* J.A. 58. The IJ also determined that the Fraud Conspiracy conviction qualified as an "aggravated felony," and was thus a per se "particularly serious crime" that likewise rendered Raza ineligible for asylum. *See* 8 U.S.C. § 1158(b)(2)(B)(i).

The IJ concluded that Raza was not eligible for withholding of removal. *See* J.A. 60. The IJ determined that Raza did not suffer past harm rising to the level of persecution, and, as to the possibility of future persecution, that Raza's proposed particular social group—non-traditional Pakistani artists—was too amorphous and not legally cognizable. The IJ also concluded that even if the proposed social group was cognizable, the evidence did not establish a likelihood of persecution based on membership in the proposed group or based on his Shia faith. *See* J.A. 63-64. Finally, the IJ denied Raza's CAT claim, concluding that Raza did not establish a clear probability that he would be tortured if he

3

returned to Pakistan or that any torture would be with the acquiescence of public officials. *See* J.A. 67-70.

Raza appealed to the Board, which upheld the IJ's decision. The Board agreed with the IJ that Raza's Fraud Conspiracy conviction qualified as an aggravated felony and a *per se* particularly serious crime, which rendered Raza ineligible to apply for asylum. *See* J.A. 10. The Board also agreed that Raza was not eligible for withholding of removal because his proposed particular social group was not legally cognizable and because Raza did not show that he would suffer persecution because of membership in that group or because of his Shia faith. *See* J.A. 11. The Board also affirmed the IJ's denial of CAT protection. The Board agreed that Raza had not shown a clear probability he would be tortured in Pakistan or that any torture would be by or with the acquiescence of the Pakistani government. *See* J.A. 11-12.

Raza thereafter filed this petition for review. Raza does not challenge the determination that his Fraud Conspiracy conviction rendered him ineligible for asylum; accordingly, the only issues before this court involve withholding of removal and protection under the CAT.

## II.

Before proceeding to the merits, we pause to address the question of venue. The Notice to Appear was filed with the Immigration Court in Baltimore, Maryland; Raza was detained in McElhatten, Pennsylvania; and the IJ presided over the merits hearing remotely from York, Pennsylvania. *See* J.A. 54. The IJ concluded that under 8 U.S.C. § 1252(b)(2), venue for any appeal would lie with the Court of Appeals for the Third Circuit. The IJ

4

therefore applied Third Circuit law when analyzing Raza's claims, but also noted that the analysis would be the same under Fourth Circuit law. *See* J.A. 54-55, 65. On review, the Board applied its precedent to conclude that the filing of the Notice to Appear established venue in the Fourth Circuit, regardless of the fact that Raza and the IJ were physically located within the geographical bounds of the Third Circuit. The Board upheld all of the IJ's rulings and determined that any error in applying the law of the Third Circuit rather than the Fourth Circuit was harmless. *See* J.A. 9-10

8 U.S.C. § 1252(b)(2) provides that a petition for review of an order of removal "shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." Under the law of this circuit, venue lies in the Third Circuit, because that is where the IJ was located. *See Herrera-Alcala v. Garland*, 39 F.4th 233, 241 (4th Cir. 2022) ("To answer which geographic circuit a petition for review 'shall be filed,' the statute directs us to where 'the immigration judge completed the proceedings.' The actor is the Immigration Judge and the action is 'complet[ing] the proceedings.' So the statute's text directs us to the geographic location where the Immigration Judge completed the proceeding."); *id.* ("[V]enue is proper where the immigration judge sits in a teleconference hearing.").

Improper venue, however, does not implicate our subject-matter jurisdiction. Congress has vested the federal courts of appeal with subject-matter jurisdiction over petitions for review of orders of removal, *see* 8 U.S.C. § 1252(a)(5), and the requirement for filing the petition in the circuit "in which the immigration judge completed the proceedings," *id.* § 1252(b)(2), is "a nonjurisdictional venue provision," *Sorcia v. Holder*,

5

643 F.3d 117, 121 (4th Cir. 2011). In this case, the parties do not seek a transfer, and we do not believe the interests of justice require us to *sua sponte* transfer to the Third Circuit. *See id.* at 122 ("[W]here we have jurisdiction but lack venue, we have inherent authority to transfer a case to another circuit where both venue and jurisdiction exist. However, . . . in the exercise of such inherent authority it is appropriate . . . to consider whether the interest of justice mandates transfer.") (cleaned up).

After the Board issued its opinion in this case, the Third Circuit weighed in on the issue and concluded that venue vests in the immigration court where the Notice to Appear is filed and remains with that court unless a motion to change venue is granted. *See Castillo v. Att'y Gen. of United States*, 109 F.4th 127, 133 (3d Cir. 2024) ("[I]n the context of remote proceedings or hearings, the physical locations of the IJ and other participants are not what dictates the answer to the question of where the proceedings occur. Instead, we agree with the First, Second, Seventh, and Ninth Circuits that 'proceedings' take place in the Immigration Court in which the proceedings began, unless there is a formal change of venue."). Accordingly, under the law of this circuit, venue lies in the Third Circuit, but under the law of the Third Circuit, venue lies with us. We do not believe the interests of justice compel us to transfer this case to a circuit where, under the law of that circuit, venue would not be proper. And because there is no material difference between the law of this circuit and that of the Third Circuit on the issues relevant to this appeal and the parties have briefed this case under Fourth Circuit law, we will apply our own law when resolving this appeal.

6

III.

A.

We first consider Raza's challenges to the denial of his application for withholding of removal. "Withholding of removal is available under 8 U.S.C. § 1231(b)(3) to an alien who shows clear probability of persecution in the proposed country of removal because of his 'race, religion, nationality, membership in a particular social group, or political opinion.'" *Lizama v. Holder*, 629 F.3d 440, 446 (4th Cir. 2011) (quoting 8 U.S.C. § 1231(b)(3)(A)). Because Raza is removeable because of his conviction for a crime of moral turpitude, our review of the removal order is limited to constitutional claims and questions of law. *See* 8 U.S.C. §§ 1252(a)(2)(C), (D).

The agency concluded that Raza had not shown a clear probability that he would be persecuted because of his religion if he returned to Pakistan. In his brief, Raza raises no viable legal or constitutional challenge to that determination.

As to Raza's claim that he would suffer future persecution because of his membership in a particular social group, the Board concluded that Raza's proposed social group of "non-traditional Pakistani artists" was not a legally cognizable social group because it "lacks particularity as the terms 'non-traditional' and 'artists' are amorphous and ill-defined." J.A. 11. Whether a proposed social group is sufficiently particular is a legal question we review *de novo*. *See Herrera-Martinez v. Garland*, 22 F.4th 173, 180 (4th Cir. 2022).

"The whole point of the particularity requirement is to ensure that a proposed group has clear boundaries." *Id.* at 183. Accordingly, "[t]his Court has rejected proposed

7

particular social groups that share only amorphous characteristics that neither provide an adequate benchmark for determining group membership nor embody concrete traits that would readily identify a person as possessing those characteristics." *Id.* at 181 (cleaned up). We agree that Raza's proposed social group is too vague and lacks the limiting characteristics necessary to qualify as a "particular social group" under the statute. We therefore affirm the Board's determination that "non-traditional Pakistani artists" is not a particular social group. And because Raza "cannot prevail on his withholding claim without a valid particular social group," *id.* at 185, we need not address his other challenges to that aspect of the agency's denial of his application for withholding of removal.

## B.

We turn now to Raza's challenge to the Board's rejection of his claim that he was entitled to the protection of the CAT.

> To succeed on a CAT claim, an applicant must show that it is more likely than not that he or she would be tortured in the country of removal. Torture is (1) any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person in a manner that is (2) by or with the consent or acquiescence of a public official or other person acting in an official capacity.

*Herrera-Martinez*, 22 F.4th at 185 (cleaned up). "The agency's factual findings—including its predictions about the likelihood of future mistreatment and government acquiescence—'are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Ponce-Flores v. Garland*, 80 F.4th 480, 484 (4th Cir. 2023) (quoting 8 U.S.C. § 1252(b)(4)(B)). "Under this highly deferential standard . . . , we review factual findings for substantial evidence, asking whether the administrative record, considered as a whole,

8

contains sufficient evidence to support the agency's factual determinations." *Id.* (cleaned up).

We have considered Raza's claims and find no error. The IJ considered the evidence of the conditions in Pakistan, including the evidence of sectarian violence by Sunni Muslims against Shia Muslims, the threats made against his father and later against his mother, and the attack against his family's home. The IJ likewise considered the evidence showing that Raza has siblings who still live in Pakistan, and they have received no threats since 2017 and have never received any threats directed at Raza. After considering all of the relevant evidence and aggregating all potential sources of harm, the IJ concluded that Raza did not establish a clear probability that he would be tortured if he returned to Pakistan or that any torture would be with the consent or acquiescence of a public official. These findings are supported by substantial evidence and are conclusive. *See Ponce-Flores*, 80 F.4th at 484.

Contrary to Raza's assertion, neither the IJ nor the Board improperly required him to prove that he would be tortured *because* of one of the enumerated grounds required for asylum and withholding of removal. *See Jian Tao Lin v. Holder*, 611 F.3d 228, 236 (4th Cir. 2010) ("Whereas both asylum and withholding of removal require an applicant's fear of persecution to be based on an enumerated ground, protection under the CAT is available for those who can prove that, whatever the motivation, it is more likely than not that he or she would be tortured if removed to the proposed country of removal.") (cleaned up). While the Board's order did state that the IJ found that Raza "had not shown that it is more likely than not that he would experience future *torture* on account of a cognizable protected

9

ground," J.A. 10 (emphasis added), the IJ's analysis did not, in fact, require Raza to tether his CAT claim to an enumerated ground. Moreover, the Board made that statement while discussing the IJ's treatment of Raza's withholding of removal claim. *See id.* ("The Immigration Judge also denied his application for withholding of removal, finding inter alia that [Raza] had not shown that it is more likely than not that he would experience future torture on account of a cognizable protected ground."). To be entitled to withholding of removal, a petitioner must show a probability of *persecution* based on an enumerated ground; it is thus clear to us that the Board's use of the word "torture" rather than "persecution" was simply a scrivener's error.

The agency's factual findings are supported by substantial evidence, and neither the IJ nor the Board made any legal errors when rejecting Raza's application for protection under the CAT.

IV.

Finding no error, we deny Raza's petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*PETITION FOR REVIEW DENIED*